UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MERCY HEALTH SYSTEM OF SOUTHEASTERN PENNSYLVANIA** | : : : : | CIVIL ACTION<br>Case No. 01-CV-5681 |
| Plaintiff, | : : | |
| v. | : : | |
| **CSI FINANCIAL, INC.,** | : : | |
| Defendant | : : | |
| **FIRST NATIONAL BANK OF MONTANA, INC. and CSI FINANCIAL, INC.** | : : : | CIVIL ACTION<br><br>**Consolidated** |
| Plaintiffs, | : : | |
| v. | : : : | |
| **MERCY HEALTH SYSTEM OF SOUTHEASTERN PENNSYLVANIA** | : : : : | |
| Defendant. | : : | |

**PLAINTIFF FIRST NATIONAL BANK OF MONTANA'S MEMORANDUM
OF LAW IN OPPOSITION TO MERCY HEALTH'S
MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**

**I.    INTRODUCTION**

Mercy Health System of Southeastern Pennsylvania ("Mercy") has improperly brought a motion to compel the production of documents against the First National Bank of Montana (the "Bank"). The Bank prepared a privilege log in accordance with Federal Rule of Civil Procedure 26(b)(5) which was produced along with non-privileged documents responsive to Mercy's First Request for Production of Documents. The next day counsel for the Bank received a letter from Mercy's counsel demanding the production of all but five documents listed on the privilege log within two days. The letter did not cite to any statutory or case law authority to support its wild

assertions of entitlement to privileged and non-responsive documents and threatened a motion to compel if the demands were not met within their arbitrarily determined time frame of two days. The Bank's counsel, in a good faith effort to address Mercy's concerns, re-checked the privilege log and documents finding that one document had been improperly withheld and that the reason for non-production had been improperly identified on three other documents. The Bank promptly produced the inadvertently withheld document and an amended privilege log reflecting the changes. The Bank also outlined its position as to why the documents were withheld with proper citation to the pertinent Federal Rules of Civil Procedure. Counsel for the Bank also pointed out the good faith requirements for bringing a motion to compel in hopes of opening a true dialog on the subject. Mercy's counsel responded later that same day by fax at the close of business on a Friday afternoon and essentially reasserted its previous demands while ignoring the plain language of Federal Rules of Civil Procedure cited to by the Bank and demanding compliance by Monday.

    As is readily apparent from Exhibits 8, 9 and 10 Mercy and its counsel have failed to make a good faith effort to resolve this dispute without the Court's involvement and this motion should be denied on that basis. Moreover, Mercy has failed to bring the Court's attention to a choice of law issue regarding the application of Montana or Pennsylvania law to the claims of privilege and has failed to accurately and completely state the applicable law, both Federal and State, on these issues. Under Federal Rule of Evidence 501 Montana law applies to the assertions of privilege at issue in this Motion. While the Bank believes its assertions of privilege are appropriate under both Montana and Pennsylvania law, the scope of the privileges asserted is broader under Montana law. Therefore, if the Court decides to reach the merits of this Motion it should be decided under Montana law. Because the Bank's assertions of privilege have been made in accordance with the law this Motion should be denied.

**II      COUNTER STATEMENT OF FACTS**

On August 26, 2002 the Bank's former counsel in this matter received Mercy's First Request for Production of Documents directed to the Bank ("Requests"). (See Exhibit 1 to the Motion to Compel.) In early September the Bank retained the undersigned counsel to represent it in this matter. On September 23, 2002, through undersigned counsel the Bank served Responses and Objections to the Requests ("Responses") and informed Mercy's counsel that the documents were available for inspection at a mutually agreeable time. (The Responses are attached as Exhibit 2 to the Motion; the cover letter accompanying the Responses is attached hereto as Exhibit A.) Counsel responded by letter dated September 26, 2002 seeking clarification as to who represented the Bank and demanding a privilege log and production of documents by October 4, 2002. (See Exhibit 3 to the Motion.)

Counsel for the Bank phoned counsel for Mercy to clear up the issue of the Bank's representation and to inquire whether counsel wished to review the documents before requesting copies. Mercy's counsel declined the opportunity to review the documents before requesting copies and it was agreed that the Bank would produce all responsive non-privileged documents and a privilege log on October 11, 2002. (See Exhibit 4 to the Motion.) Due to the volume of documents at issue (in total over 1,000 pages of documents have been produced by the Bank) counsel for the Bank was unable to fully comply by October 11, 2002 and instead made a partial production of over 800 pages on October 18, 2002 and produced approximately 200 more pages and a detailed privilege log on October 30, 2002.[1] (See Exhibits 5, 6 and 7 to the Motion. The privilege log is Exhibit 7.)

On October 31, 2002 Mercy's counsel faxed a letter declaring the privilege log to be

---

[1] Mercy has also received over 4,000 pages of discovery from CSI Financial, Inc., the other party in this lawsuit.

completely unacceptable, demanding production of 54 of 59 documents withheld as privileged in two days, and threatening to move to compel and for sanctions if their demands were not met. (See Exhibit 8 to the Motion.) The letter fails to cite to any authority whatsoever, but instead makes inaccurate or incomplete statements of the law. (See Id.) Counsel for the Bank attempted to head off the situation by double checking the documents it had withheld as privileged. (See Exhibit 9 to the Motion.) In so doing counsel realized that one document (Document 50) had been inadvertently withheld and that the reason for non-production had been improperly stated for three other documents (Documents 45, 46, and 47). (See Id.) On Friday November 2, 2002, counsel produced an amended privilege log and the inadvertently withheld Document 50, a one page e-mail that had been sent to a employee of Mercy and thus was already in their possession. (Id., A true and correct copy of the amended privilege log is attached hereto as Exhibit B.) Counsel also outlined the Bank's position as to why the documents withheld were entitled to protection with citation to the relevant Federal Rules of Civil Procedure and reminded Mercy's counsel of the good faith effort to resolve discovery disputes without the court's intervention. (Id.)

     Mercy's counsel responded later that same day by fax, just before the close of business on a Friday, stating that the Bank's position was unsupported by authority (untrue), re-demanding production of privileged documents by Monday, and threatening to file a motion to compel on Monday if they were unsatisfied or unconvinced by the Bank's response. See Exhibit 10 to the Motion. The letter completely ignores the plain language of the Federal Rules of Civil Procedure cited to by the Bank. The letter cites to one memorandum opinion, Penn Valley Pump Co., Inc. v. Alfa Laval Pumps, Inc., Civ.A. 97-5194, 1999 WL 1293348 (E.D.Pa. Dec. 30, 1999) (also cited in Mercy's Memorandum of Law) (copy attached as Exhibit C), which does not stand for the proposition that Mercy cites it for. (See Exhibit 10 to the Motion.) Aside from this one case

Mercy's alleged good faith efforts to resolve this dispute do not contain any citation to authority to support its incorrect statements of the law. (See Exhibits 8 and 10 to the Motion.) Moreover, Mercy has made no effort to ascertain what relevant information is contained in the documents and whether that information is even necessary to their claims and defenses or whether the information is available from other sources already produced. (Id.) Mercy has also failed to set forth any basis showing that it has substantial need for the documents and that its case will be prejudiced if it does not have access to the documents. (Id.)

**III.    LEGAL ARGUMENT**

    **A.    Mercy Has Not Complied with the Good Faith Requirements of Either the Federal or Local Rules of Civil Procedure.**

Federal Rule of Civil Procedure 37(a)(2) requires a party bringing a motion to compel discovery to include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action. Local Rule of Civil Procedure 26.1(f) of the United States District Court for the Eastern District of Pennsylvania ("Local Rule 26.1") provides that no motion regarding discovery under the Federal Rules of Civil Procedure, "shall be made unless it contains a certification of counsel that the parties, after a reasonable effort, are unable to resolve the dispute."

While Mercy's counsel has included such a certificate with its Motion to Compel it is respectfully submitted that there has been no good faith or reasonable effort to resolve this dispute. As is readily apparent from Exhibits 8 and 10 to the Motion, counsel for Mercy did nothing more than make demands and deliver ultimatums that their wishes be complied with in an unreasonably short period of time or else. Moreover, the sole authority referred to by Mercy's counsel to support those demands does not stand for the proposition for which it is cited, and even if it could be so construed, it would be in clear contradiction of Federal Rule of Civil Procedure 26(b)(3).

The only authority cited by Mercy's counsel in its alleged 'good faith' effort to resolve the dispute without court intervention is the case <u>Penn Valley Pump Co., Inc. v. Alfa Laval Pumps, Inc.</u>, Civ.A. 97-5194, 1999 WL 1293348 (E.D.Pa. Dec. 30, 1999) (A copy is attached as Exhibit C). Mercy's counsel cites <u>Penn Valley</u> to support its assertion that in order for the work product doctrine to apply to documents created by a party they "must be prepared <u>at the direction of an attorney</u>." (See paragraph 3 from Exhibit 10 to the Motion, emphasis in the original. See also Mercy's Memorandum of law page 12.) First, in <u>Penn Valley</u> the court held that documents created by a party at the direction of their attorney to assist the attorney in understanding the issues in the litigation were clearly protected under F.R.C.P. 26(b)(3). This case cannot be fairly read for the proposition that only such documents are protected under F.R.C.P. 26(b)(3).

Second, Even if <u>Penn Valley</u> expressly held the meaning ascribed to it by Mercy it would be clearly erroneous because it would contradict the plain meaning of F.R.C.P. 26(b)(3). Federal Rule of Civil Procedure 26(b)(3) states in pertinent part:

> A party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing of substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

The notes to the 1970 Amendments make it clear that the 26(b)(3) was being expanded beyond the narrow scope that Mercy and its counsel try to ascribe to it. <u>Federal Trade Commission v. Grolier Inc.</u>, 462 U.S. 19 (1983) (discussing F.R.C.P. 26(b)(3) and the 1970 Amendments and stating that the literal meaning of the Rule is that it protects any material prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation). <u>See also</u>, <u>United Coal Companies v. Powell Construction Co.</u>, 839 F.3d 958 (3d Cir. 1988) (finding the district court's ruling that work product only applied to the mental impressions of a lawyer

inconsistent with the plain language of F.R.C.P. 26(b)(3)).

Black's Law Dictionary, 6th Edition, defines good faith in part as "that state of mind denoting honesty of purpose, freedom of intention to defraud, and, generally speaking, means being faithful to one's duty or obligation." Counsel for Mercy has failed to live up to any semblance of good faith in questioning the Bank's assertion of attorney client privilege and the work product doctrine. They have made erroneous and unsubstantiated statements of the law, have issued demands, ultimatums and threats, and have failed to take any action to actually confer with the Bank's counsel regarding these issues. Under these circumstances Mercy's Motion to Compel should be dismissed for failure to make a good faith effort resolve this dispute. American Health Systems, Inc. v. Visiting Nurse Administration of Greater Philadelphia, Civ. A. No. 93-0542, 1994 WL 594424 (E.D.Pa. Oct. 20, 1994) (dismissing motion to compel production of documents for failure to make good faith effort to resolve dispute as required by local rule).

### B.    Montana Law Applies to the Claims of Attorney Client Privilege.

Under Federal Rule of Evidence 501 a federal court sitting in diversity must apply state law to issues of privilege. However, this applies only to issues involving attorney client privilege not work product privilege. United Coal Companies v. Powell Construction Co., 839 F.3d 958 (3d Cir. 1988) (unlike the attorney client privilege the work product privilege is governed in diversity cases by the uniform federal standard found in F.R.C.P. 26(b)(3)). A federal court sitting in diversity must apply the choice of law rules of the forum state. PECO Energy Co. v. Boden, 64 F.3d 852 (3d Cir. 1995). Under Pennsylvania law the state having the most interest in the problem and which is the most intimately concerned with the outcome is the forum whose law should be applied. Id. The Bank is a Montana resident for purposes of diversity jurisdiction and its employees are all residents of Montana. CSI is a Montana corporation with its principal

place of business in Montana and its employees are Montana residents.  During the time period the documents were created the Bank and CSI were jointly represented by a Montana lawyer, R. J. Sewell.  The Bank also was independently represented by Keith Strong, Esquire who is also a resident of Montana.  All of the documents were either created by or for Montana residents.  In most instances the documents at issue are communications between Montana residents.  Under similar facts the Third Circuit upheld the application of Ohio law to the privilege issues before the District Court for the Western District of Pennsylvania.  Samuelson v. Susen, 576 F.2d 546 (3d Cir. 1978).

Attorney client privilege is codified under both Montana and Pennsylvania law.  Montana Code Annotated, § 26-1-803 states, "(1) An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given to the client in the course of professional employment. (2) A client cannot, except voluntarily, be examined as to any communication made by him to his attorney or the advice given to him by his attorney in the course of the attorney's professional employment."  Pennsylvania law states, "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose same, unless in either case this privilege has been waived upon the trial by the client."  Pa.C.S.A. § 5928.  Montana's codification of the attorney client privilege is clearly broader than Pennsylvania's thus to the extent that it is necessary to apply state law to the issue of attorney client privilege Montana law should apply.

  **C.**  **The Bank has Properly Asserted the Attorney Client Privilege in Connection with Documents Withheld from Production.**

   1.  <u>The Bank did not waive the attorney client privilege through internal communications.</u>

The sharing of a document or communication between individuals who work for a

company, where the company is the client, does not destroy the attorney client privilege. See, Penn Valley Pump Co., Inc. v. Alfa Laval Pumps, Inc., Civ.A. 97-5194, 1999 WL 1293348 (E.D.Pa. Dec. 30, 1999) (fact that engineer sought input from other departments of the corporate entity to prepare a thorough analysis of the issues does not place work product privilege in issue); Kuiper v. District Court of the Eighth Judicial District, 632 P.2d 694 (Mont. 1981) (waiver could be found where dissemination of document done by persons not connected with company); Upjohn Co. v. United States, 449 U.S. 383 (1981) (attorney client privilege extends to all individuals within corporation that have facts relevant to the case at hand). Mercy's argument completely ignores that a waiver of the privilege only applies when the communication is disseminated to third-parties. Employees of the Bank are clearly not third-parties.

Even if they are considered third-parties this does not necessarily waive the attorney client privilege. Westinghouse v. Republic of Philippines, 951 F.2d 1414 (3d Cir. 1991) (when disclosure to third party is necessary for client to obtain informed legal advice disclosure does not waive privilege). In Upjohn, the United States Supreme Court held that communications between the attorney for a corporation and the corporations employees who have information relevant to matter at hand are subject to the attorney client privilege. Upjohn, 449 U.S. at 397. In the instant matter information needed by the Bank's attorneys to render legal advice was communicated between different employees on its way to the attorney. The Bank should not be penalized with the waiver of the attorney client privilege for these communications because an attorney was not party to each individual communication. Likewise, the Bank's employees should be free to discuss the advice of the Bank's attorneys without the attorney being present for or a party to each utterance of that advice. See, Bowen v. Parking Authority of the City of Camden, CA No. 00-5765 (JBS), 2002 WL 17554493 (D.N.J. July 30, 2002) (An attorney-client communication remains confidential when it is disclosed to persons in furtherance of the

rendition of legal services) (citing Weinstein's Federal Evidence, § 503.15 (2 ed. 2002)).

If Mercy's position on this point were correct then the employees of a corporation or other organization that was represented by an attorney in connection with litigation would not be able to discuss the advice of counsel or the information needed by counsel to render legal advice without the attorney being present or they would waive the attorney client privilege respecting those communications. Or to put it another way, the president of a company could not share the advice of counsel with the vice president of that company or board members in the absence of its attorney or he would waive the attorney client privilege with respect to that communication. This would be an impractical and unrealistic interpretation of the privilege and would effectively make it unavailable to corporations or other organizations. There is also no support in the case law for such a position.

        2.      The Bank and CSI were represented by the same attorney therefore the common interest doctrine applies to communications between the Bank and CSI regarding litigation strategy and legal advice.

Mercy also argues that the common interest exception does not apply. Under the common interest exception disclosure of an otherwise protected document to a third-party does not waive the attorney client privilege. In Re: Diet Drugs Products Liability Litigation, MDL Docket No. 1203, 2001 U.S. Dist. LEXIS 5494 (E.D.Pa. April 19, 2001); Russo v. Cabot Corp., CA No. 01-2613, 2001 U.S. Dist. LEXIS 23861 (E.D.Pa. Oct. 26 2001). "Generally, the common interest doctrine preserves privilege where two or more persons or companies that share a common interest in a legal issue exchange privileged communications with one another. At its core, it applies when one attorney represents multiple individuals on the same matter." Diet Drugs Products Liability Litigation, 2001 U.S. Dist. LEXIS at *14; see also, Libbey Glass, Inc. v. Oneida, Ltd., 197 F.R.D. 342, 347 (N.D. Ohio 1999) (there are three exceptions to usual third party disclosure rule "joint client," "joint litigant" and "common interest" relationships). When

this is the case it protects confidential communications shared between the clients and their attorney to establish a defense strategy. Id. The common interest doctrine can also extend to protect information shared between parties with a common interest in the litigation where there is an identical legal interest with respect to the subject matter of the communication. Id. at *14-15, 347.

In the present case both the Bank and CSI were represented by attorney R. J. Sewell, Jr. in connection with this litigation and events leading up to the litigation. See Affidavit of William E. Partain attached as Exhibit D. As such communications involving employees of the Bank, employees of CSI and Mr. Sewell regarding the instant matter are covered by the attorney client privilege and are not subject to disclosure. Mercy's arguments on this point are merit less. First, the privilege log makes it clear that the common interest doctrine is being invoked even if it is not expressly stated. Also, Mercy did not object to the assertion of attorney client privilege because of disclosure to a third-party before filing its Motion to Compel. See Exhibits 8 and 10. Second, because the Bank and CSI were represented by the same counsel it is not necessary to undertake an analysis of whether or not their common legal interest is identical. Diet Drugs Products Liability Litigation, 2001 U.S. Dist. LEXIS at *14-15. Moreover, counsel for Mercy's assertions as to who did what and why do not make sense nor do they amount to competent evidence on this issue. Meridian Mort. Corp. v. Spivak, Civ. A. No. 91-3932, 1992 WL 205640 (E.D.Pa. Aug. 14, 1992) (statements in brief are not competent evidence). Finally, a review of the Patient Finance Agreement also makes it clear that the Bank, as express third party beneficiary with the right to enforce the agreement against Mercy, has an identical legal interest with CSI in this litigation. (A copy of the Patient Finance Agreement is attached as Exhibit E.)

> D. **The Bank has Properly Asserted the Work Product Doctrine in Connection with Documents Withheld from Production.**

As set forth above in Section A of the Memorandum under Federal law the work product

doctrine extends to all documents created by a party in anticipation of litigation or in preparation for trial.  F.R.C.P. 26(b)(3); <u>Federal Trade Commission v. Grolier Inc.</u>, 462 U.S. 19 (1983); <u>United Coal Companies v. Powell Construction Co.</u>, 839 F.3d 958 (3d Cir. 1988); <u>Kuiper v. District Court of the Eighth Judicial District</u>, 632 P.2d 694 (Mont. 1981) (applying Montana R.Civ.P. 26(b)(3) which is identical to F.R.C.P. 26(b)(3) and noting that work product reflecting the mental impressions and opinions of the author are accorded the highest level of protection).  Mercy incorrectly cites to <u>Penn Valley Pump Co., Inc. v. Alfa Laval Pumps, Inc.</u>, Civ.A. 97-5194, 1999 WL 1293348 (E.D.Pa. Dec. 30, 1999) for the proposition that to qualify for work product protection a document must be created by or for an attorney.  This is both a distortion of the holding of <u>Penn Valley</u>, and contrary to the great weight of controlling authority including decisions by the Third Circuit and United States Supreme Court.  Documents created by a party in anticipation of litigation or in preparation for trial are work product and entitled to the protection of F.R.C.P. 26(b)(3).  Mercy has not put forth any evidence to show that they have substantial need of the materials in the preparation of their case and that they are unable without undue hardship to obtain the substantial equivalent by other means.  Therefore, Mercy is not entitled to the production of documents withheld on the basis of work product.

> E.   **The Bank Properly Redacted Non-Responsive Portions of Documents and Withheld Documents that were Largely Non-Responsive and Contained only Duplicative Responsive Information.**

Mercy's final argument is also without merit.  Just as a party cannot move for a motion to compel without a certification of good faith attempt to resolve the dispute a party cannot move for a protective order without a similar certification.  <u>See</u>, F.R.C.P. 26(c); and Local Rule 26.1.  If the Bank would have produced outright documents that it has either redacted non-responsive information from or withheld entirely because the responsive portion was duplicative of other documents being produced it would have waived any objection to their production.  <u>Rhone-</u>

<u>Poulenc Rorer Inc. v. The Home Indemnity Co.</u>, 32 F.3d 851, 860-1 (3d Cir. 1994). By including these documents on its privilege log the Bank has alerted Mercy to their presence and has laid the ground work for good faith discussion of their production to the extent they are responsive. If the Bank had simply sought a protective order without attempting to discuss the issue with Mercy it would have been in violation of the good faith requirements of the Federal and Local Rules as Mercy is in bringing the instant Motion to Compel without engaging in any meaningful efforts to resolve the dispute.

 Mercy's arguments on this point are also without any support from either the Federal Rules of Civil Procedure or case law. There is no requirement that the Bank explain why non-responsive documents are non-responsive. There is also no requirement for the Bank to tell Mercy which documents that have been produced contain the duplicative information in the documents that have been withheld.

IV. **CONCLUSION**

The Bank properly withheld documents protected by the attorney client privilege, the federal work product doctrine, and non-responsive documents. The Bank prepared a privilege log in accordance with Federal Rule of Civil Procedure 26(b). Mercy's blatant demand for the production of these documents, improper citation to authority, and complete lack of any real or meaningful effort to discuss the issues raised by their ultimatums before bringing this Motion to Compel evidences a lack of good faith effort to resolve these issues as is required by the Rules of Court. The lack of good faith alone is sufficient to dismiss the Motion to Compel and award the Bank the costs in defending this unwarranted action including reasonable attorneys fees. The underlying claims are also baseless and the Motion fails on the merits as well.

**Respectfully submitted,**

**KITTREDGE, DONLEY, ELSON,
 FULLEM & EMBICK, LLP**

_____

**Joseph M. Donley
Christopher M. Brubaker
421 Chestnut Street, 5th Floor
Philadelphia, PA 19106
(215) 829-9900**

**Attorneys for Plaintiff First National Bank of Montana**

**Dated November 18, 2002**