8

Case 2:02-cv-03608-JKG    Document 43-11    Filed 11/24/2004    Page 1 of 3

```
                                          1
        UNITED STATES DISTRICT COURT
       EASTERN DISTRICT OF PENNSYLVANIA

                    - - -

MERCY HEALTH SYSTEM OF    : CIVIL ACTION
SOUTHEASTERN PENNSYLVANIA : Case No. 01-CV-5681
         Plaintiff,       :
                          :
         v.               :
                          :
CSI FINANCIAL, INC.       :
         Defendant.       :
-------------------------------------------
FIRST NATIONAL BANK OF    : CIVIL ACTION
MONTANA, INC. and CSI     : Consolidated
FINANCIAL, INC.           :
         Plaintiffs,      :
                          :
         v.               :
                          :
MERCY HEALTH SYSTEM OF    :
SOUTHEASTERN PENNSYLVANIA :
         Defendant.       :

                    - - -
           Friday, October 17, 2003
                    - - -

        Oral deposition of RUSS ERDMAN,
held at the Law Offices of Kittredge, Donley,
Elson, Fullem & Embick, LLP, 421 Chestnut
Street, Fifth Floor, Philadelphia, Pennsylvania
19106, commencing at 9:51 a.m., on the above
date, by and before Veronica M. Mc Kee,
Professional Shorthand Reporter and Notary
Public, Commissioner of Deeds.

                    - - -
```

```
                                                    2
    A P P E A R A N C E S:


        STEVENS & LEE
        BY:  STACEY A. SCRIVANI, ESQUIRE
             RONALD L. WILLIAMS, ESQUIRE
        111 North Sixth Street
        P.O. Box 679
        Reading, Pennsylvania  19603-0679
        (610) 478-2086

        Counsel for Mercy Health System of
        Southeastern Pennsylvania



        KITTREDGE, DONLEY, ELSON, FULLEM &
        EMBICK, LLP
        BY:  CHRISTOPHER M. BRUBAKER, ESQUIRE
        421 Chestnut Street
        Fifth Floor
        Philadelphia, Pennsylvania  19106
        (215) 829-9900

        Counsel for First National Bank of
        Montana, Inc.


                    --
```

```
                                                 3
                   I N D E X

      WITNESS                             PAGE

      RUSS ERDMAN


      BY:  MR. BRUBAKER                      4


                 E X H I B I T S

                                           PAGE
      NUMBER     DESCRIPTION              MARKED

      Erdman 1   Notice of deposition        7

      Erdman 2   Two page CSI document      72

      Erdman 3   One page CSI document     112

      Erdman 4   Two page CSI document     142

      Erdman 5   Three page CSI document   146

      Erdman 6   Two page CSI document     152

      Erdman 7   E-mail correspondence     159

      Erdman 8   CSI document, 41 pages    160

      Erdman 9   Patient financial agreement  174

      Erdman 10  Assignment of accounts
                 receivable                217

      Erdman 11  E-mail correspondence     252

      Erdman 12  Two page CSI document     257

      Erdman 13  Return reports            259

      Erdman 14  Bank statements           265
```

```
                                                  4
            (By agreement of counsel,

      the sealing, certification, and filing

      are waived; and all objections, except

      as to the form of the question, are

      reserved until the time of trial.)

                    - - -

            RUSS ERDMAN, after having been

      duly sworn, was examined and testified

      as follows:

                    - - -

              E X A M I N A T I O N

                    - - -

BY MR. BRUBAKER:

Q.      Good morning, Mr. Erdman.  My name is

Christopher Moore Brubaker.  I'm an attorney.

I represent the First National Bank of Montana

in a case pending in the Eastern District also

involving Mercy Health System and CSI

Financial.

        First off, is it all right with you if

I refer to Mercy Health System of Southeastern

Pennsylvania simply as Mercy?

A.      Yes.

Q.      You'll understand what I am referring
```

**105**

1  report since it was a 90 days as a recourse
2  file and immediate notice but I would not have
3  held that assumption for subsequent recourse
4  files.
5  Q.    So, by the spring of 2000 when you
6  first viewed the contract, how many recourse
7  files had you received?
8  A.    To the best of my recollection, one.
9         MS. SCRIVANI: It's about 12:30.
10  What do you want to do about lunch?
11         MR. BRUBAKER: We can stop here
12  if that's --
13         THE WITNESS: It's up to you
14  guys. I just want to run to the men's
15  room for like two seconds. I'm
16  drinking all this water.
17         MS. SCRIVANI: Why don't we stop
18  for lunch. Do you want to do a half
19  an hour?
20         MR. BRUBAKER: Can we say 45?
21         MS. SCRIVANI: That's fine with
22  me.
23              - - -
24         (Whereupon, at this time a lunch

**106**

1  recess was taken from 12:26 p.m. to
2  1:15 p.m.)
3              - - -
4         MR. BRUBAKER: Can you just read
5  back the last question and answer?
6              - - -
7         (Whereupon, the court reporter
8  read the testimony back as requested.)
9              - - -
10  BY MR. BRUBAKER:
11  Q.    So, before lunch we were talking about
12  when you first viewed the contract with CSI and
13  the bank and Mercy. At that time, did you
14  obtain a better understanding of what Mercy's
15  obligations were under the contract?
16         MS. SCRIVANI: Object to the
17  form. You can answer.
18         THE WITNESS: Yes, I did.
19  BY MR. BRUBAKER:
20  Q.    And what was that understanding?
21  A.    That understanding was to report
22  payments that we had received back to CSI as
23  well as returns that we were requesting back
24  from CSI as well as paying for the payments and

**107**

1  returns and recourse by CSI as per the terms of
2  the contract.
3  Q.    Were you aware of those items before
4  you viewed the contract?
5  A.    No, I was not.
6  Q.    So, were you preparing return files or
7  payment files prior to viewing the contract?
8  A.    Yes, I was.
9  Q.    Did you know why you were doing it?
10  A.    Yes, I did.
11  Q.    And why were you doing it?
12  A.    Because my vice president told me to
13  do it.
14  Q.    But you didn't understand that it was
15  -- at that time that it was some relation to
16  the contract, you were just doing it because
17  you were told to do it?
18  A.    That's correct.
19  Q.    Did you make any changes in the way
20  you went about doing any of those things after
21  you first viewed the contract?
22  A.    No, I did not.
23  Q.    Now, we were also talking about the
24  immediate notice provision. And you mentioned

**108**

1  that when you viewed the contract, that was the
2  first time you became aware of the immediate
3  notice provision?
4  A.    That's correct.
5  Q.    And I believe you said that there was
6  only -- you had only received the one recourse
7  file from CSI at that time?
8  A.    To the best of my knowledge, yes, we
9  had only received one recourse file.
10  Q.    Did you find that unusual after
11  viewing the contract?
12  A.    No.
13  Q.    Why not?
14  A.    I'm not sure I understand your
15  question when you say do you find that unusual.
16  Well, I mean the fact that we received only one
17  recourse file?
18  Q.    Yes.
19  A.    No, I didn't find that unusual.
20  Q.    Why did you not think it was unusual
21  to have received only one recourse file over an
22  at that point six, seven month period?
23  A.    I would assume they were collecting
24  our accounts.