2

1                    A P P E A R A N C E S:

2

3      STEVENS & LEE, ESQUIRES
       BY:   RONALD L. WILLIAMS, ESQUIRE
4      620 Freedom Business Center
       Suite 200
       P.O. Box 62330
5      King of Prussia, PA 19406

6                     and

7      STEVENS & LEE, ESQUIRES
       BY:   STACEY A. SCRIVANI, ESQUIRE
8      111 North Sixth Street
       P.O. Box 679
9      Reading, PA 19603-0679

10        Attorneys for Mercy Health System of
          Southeastern Pennsylvania
11

12     KITTREDGE, DONLEY, ELSON,
       FULLEM & EMBICK, LLP
13     BY:   CHRISTOPHER J. DAY, ESQUIRE
       421 Chestnut Street
14     Fifth Floor
       Philadelphia, PA 19106
15

16        Attorneys for First National Bank
          of Montana, Inc.
17

18     ALSO PRESENT:

19     -Russell Erdman, Designated Rep. Of Mercy
       (present after lunch)
20                    *   *   *

21

22

23

24



3

W I T N E S S   I N D E X

Examination of Mr. Smith by Mr. Day
        page 4

* * *

E X H I B I T S

Exhibit Smith-1:  Patient Financing Agreement
        Page 102

Exhibit Smith-2:  10-2-01 E-mail
        Page 208

Exhibit Smith-3:  7-11-01 E-mail
        Page 221

Exhibit Smith-4:  10-4-01 Letter
        Page 227

Exhibit Smith-5:  8-23-01 E-mail w/Attachments
        Page 233

Exhibit Smith-6:  10-9-01 Letter
        Page 241

Exhibit Smith-7:  11-28-01 Letter
        Page 243

* * *



**Royal Court Reporting Service, Inc.**
1422 Chestnut Street, Suite 200R, Philadelphia, PA  19102
Phone: 215-563-1782 • 1-888-595-RCRS • Fax: 215-563-2955

DOUGLAS SMITH

4

1                    (It is hereby stipulated by and

2                    between counsel that all

3                    objections, except as to the form

4                    of the question, be reserved until

5                    the time of trial)

6        DOUGLAS SMITH, having been duly sworn,

7    was examined and testified as follows:

8    EXAMINATION OF MR. SMITH BY MR. DAY:

9      Q.    Good morning, Mr. Smith.   My name is

10   Christopher Day, I represent First National Bank

11   of Montana in a litigation which also involves

12   Mercy Health System of Southeastern

13   Pennsylvania.

14            Before we begin your deposition I'd like

15   to give you a few instructions.   Please allow me

16   to finish the question before you begin your

17   answer, because we have a court reporter sitting

18   to your left who is taking down everything we

19   say and she can't take both of our statements

20   down at the same time.   I will certainly accord

21   you the same courtesy.

22     A.    Okay.

23     Q.    If you have a... an answer that's yes or

24   no answer, rather than shaking your head or



**Royal Court Reporting Service, Inc.**
1422 Chestnut Street, Suite 200R, Philadelphia, PA 19102
Phone: 215-563-1782  •  1-888-595-RCRS  •  Fax: 215-563-2955

DOUGLAS SMITH

213

1    A.    I think the e-mail speaks for itself.

2    Q.    No.  I'm asking what you told --

3    A.    I don't remember the specific

4  conversation.

5    Q.    Okay.  So you didn't know that this was a

6  demand from the bank?

7    A.    Well, I didn't know who it was from.

8    Q.    You didn't know that this was an e-mail

9  from the bank?

10    A.    No.

11    Q.    All right.  And did you have --

12    A.    It was from somebody at

13  bankersresource.com.

14    Q.    Did you have any indication prior to

15  receiving this e-mail that the bank was

16  demanding payment on the outstanding amount that

17  it claimed Mercy owed?

18             MR. WILLIAMS:  Objection to form.

19        Go ahead and answer.

20    A.    I knew from conversations with Bob Jaeb

21  that they wanted to get money.

22    Q.    That who wanted to get money?

23    A.    The bank.

24    Q.    And money for what?



**Royal Court Reporting Service, Inc.**
1422 Chestnut Street, Suite 200R, Philadelphia, PA  19102
Phone: 215-563-1782  •  1-888-595-RCRS  •  Fax: 215-563-2955

DOUGLAS SMITH

214

1    A.    Money for accounts that they claimed were

2    recoursed.

3    Q.    Okay.  And what conversations did you

4    have with Mr. Jaeb to this effect?

5    A.    He wanted either a new account file to

6    offset or a wire.

7    Q.    And what was your response?

8    A.    I said at the time that we were going to

9    look into doing a new account file for offset.

10   Q.    You said that you were going to look into

11   it or you said you were going to send a new --

12   A.    We said that we were going to --

13   Q.    I'm sorry, I'm not finished.

14        MR. WILLIAMS:  No, you interrupted

15        him, counsel.

16        MR. DAY:  I did not interrupt him.

17        Please do not raise your voice to me.

18        MR. WILLIAMS:  No, you did

19        interrupt him.  And if it's too late in

20        the day for you, since you've re-hashed

21        things and re-hashed things and re-hashed

22        things, maybe -- you may find it funny,

23        but you continued to interrupt him --

24        MR. DAY:  I find your behavior



DOUGLAS SMITH

215

1    funny.

2         MR. WILLIAMS:  -- from the first

3    time we started this deposition.  So you

4    just quit interrupting the witness and

5    let him finish answering.

6         MR. DAY:  Again, I did not

7    interrupt the witness and I'm not going

8    to argue about who interrupted whom.

9         MR. WILLIAMS:  Yeah, you are.  You

10   just --

11   BY MR. DAY:

12     Q.   Mr. Smith, please don't interrupt me when

13   I'm not finished a question.

14        MR. DAY:  Now, I'm going to ask the

15   court reporter --

16        MR. WILLIAMS:  Don't you interrupt

17   him while he's trying to answer the

18   question.

19        MR. DAY:  -- to please read back

20   the question.

21        MR. WILLIAMS:  What I'd like is the

22   last --

23        MR. DAY:  I really don't care what

24   you would like.



**Royal Court Reporting Service, Inc.**
1422 Chestnut Street, Suite 200R, Philadelphia, PA 19102
Phone: 215-563-1782 • 1-888-595-RCRS • Fax: 215-563-2955

DOUGLAS SMITH

216

1          MR. WILLIAMS:  No.  I'm going to

2     have that.  You're interrupting me, so

3     it's on purpose.

4          MR. DAY:  You continue to talk

5     while she needs to read.

6          MR. WILLIAMS:  Thanks so much,

7     Chris.  I appreciate those pointers.

8               (Designated question and answer is

9     read:

10         Q.  You said that you were going to

11    look into it or you said you were going

12    to send a new --

13         A.  We said that we were going to --

14         Q.  I'm sorry, I'm not finished.)

15         MR. WILLIAMS:  And you weren't

16    finished --

17         MR. DAY:  Asking my question,

18    right.

19         MR. WILLIAMS:  -- finished

20    interrupting him.

21   BY MR. DAY:

22    Q.  You said that you were going to look into

23   sending a new file of accounts or you said you

24   were going to send a new file of accounts?



**Royal Court Reporting Service, Inc.**
1422 Chestnut Street, Suite 200R, Philadelphia, PA  19102
Phone: 215-563-1782 • 1-888-595-RCRS • Fax: 215-563-2955

DOUGLAS SMITH

217

1    A.    We said at the time that we were going to

2   send a new file of accounts as offset.

3    Q.    Okay.  And when was this conversation?

4    A.    I believe we had the conversation in

5   September of 2001.

6    Q.    Do you remember if it was the beginning

7   of September or the end of September?

8    A.    I think it was in the beginning of

9   September.

10    Q.    Did you ever send a new file of accounts?

11    A.    No.

12    Q.    Why not?

13    A.    Well, at this point in time my confidence

14   was pretty shaken in the whole program and I was

15   evaluating whether we wanted to continue with

16   this program or not.  Russ and I were having

17   serious conversations almost on a daily basis

18   about what to do with this whole thing.

19    Q.    And what did those conversations entail?

20    A.    Whether we wanted to risk additional

21   receivables from Mercy to the support a program

22   where we basically had just lost confidence in

23   the whole thing.

24    Q.    And you knew that you had -- that Mercy



DOUGLAS SMITH

218

1   had an outstanding balance with the bank,

2   correct?

3              MR. WILLIAMS:  Objection to form.

4       A.   No, I didn't.  I didn't have any balance

5   with the bank at all.  A very small balance.

6       Q.   You didn't?

7       A.   I never -- I would never acknowledge that

8   we owed them any money on improperly recoursed

9   accounts.

10      Q.   Well, you continued through the history

11  of the relationship to send new accounts to

12  offset the balance, didn't you?

13      A.   Very small files in August.

14      Q.   But you did, correct?

15      A.   Very small files in August.

16      Q.   It's a yes or no answer.

17      A.   Yes, we sent very small files.

18      Q.   To offset the balance that you owed the

19  bank?

20      A.   Yes.

21      Q.   Okay.  You didn't tell the bank that you

22  didn't owe it any money, did you?

23      A.   No, not at that point.

24      Q.   Well, if the bank is asking you, or if



**Royal Court Reporting Service, Inc.**
1422 Chestnut Street, Suite 200R, Philadelphia, PA 19102
Phone: 215-563-1782 • 1-888-595-RCRS • Fax: 215-563-2955

DOUGLAS SMITH

219

1    Bob Jaeb is telling you that you owe the bank a

2    lot of money, why are you saying that you don't

3    owe the money?  Why, instead, are you sending

4    new accounts to offset the balance?

5      A.    Well, we were in a period of time where

6    we were really trying to seriously evaluate

7    whether we wanted to continue with the program

8    or not.  I hadn't made the decision.  I wasn't

9    really sure what I wanted to do at that point.

10     Q.    How does that affect --

11     A.    I had serious misgivings about the

12    program.  In my heart of hearts I wanted to

13    somehow see it work out, but I really didn't

14    think it was going to at that point.

15     Q.    So that's why you didn't tell the bank

16    that you didn't owe it any money?

17     A.    I never had any communication with the

18    bank the whole two years.  Because within the

19    contract it says that all of our communication

20    had to be through CSI.

21     Q.    Did you tell CSI that you didn't owe the

22    bank any money?

23     A.    Not in August.

24     Q.    How about in July of 2001?



**Royal Court Reporting Service, Inc.**
1422 Chestnut Street, Suite 200R, Philadelphia, PA  19102
Phone: 215-563-1782 • 1-888-595-RCRS • Fax: 215-563-2955

DOUGLAS SMITH

220

1    A.    No.

2    Q.    How about June?

3    A.    No.

4    Q.    May?

5    A.    No.

6    Q.    At any time prior to -- well, when was

7    the first time you told CSI that you don't owe

8    the bank any money?

9    A.    After a meeting with counsel and deciding

10   that we felt that there was a material breach of

11   the contract.

12   Q.    And was that after you received this

13   e-mail on October 2nd?

14   A.    Yes, it was.

15   Q.    Okay.  And when did that meeting occur?

16   A.    Which one?

17   Q.    The meeting with counsel that you said

18   you had.

19   A.    Sometime in September, but I don't

20   remember the exact date.

21   Q.    And when was the first time you told the

22   bank that you don't owe them any money?

23   A.    I personally did not.

24   Q.    When was the first time that Mercy did?



**Royal Court Reporting Service, Inc.**
1422 Chestnut Street, Suite 200R, Philadelphia, PA  19102
Phone: 215-563-1782 • 1-888-595-RCRS • Fax: 215-563-2955

DOUGLAS SMITH

221

1    A.    I would say -- you'd have to check the

2    documents.  I think it was either October or

3    November.

4    Q.    Did you ever have return files going

5    directly to you?

6    A.    Pardon?

7    Q.    Did you ever have return files going

8    directly to you rather than to Mr. Erdman?

9    A.    Only if that was an error on CSI's part.

10   All files were supposed to go through Russ.

11   Q.    I'm going to show you here a document

12   that was produced by Mercy numbered 002742.  Can

13   you do me a favor and read that.

14              (Exhibit Smith-3, 7-11-01 E-mail,

15        is marked for identification)

16   BY MR. DAY:

17   Q.    Do you see where that says that you

18   requested --

19              MR. WILLIAMS:  I think he's still

20        reviewing it, counsel.

21   A.    I haven't finished reading it yet.

22              MR. DAY:  I'm asking him --

23              MR. WILLIAMS:  Just let him finish

24        reading --



# EXHIBIT "J"

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT FOR
              THE EASTERN DISTRICT OF PENNSYLVANIA
 2
 3   MERCY HEALTH SYSTEM OF          )
     SOUTHEASTERN PENNSYLVANIA,      )
 4                                   )
                    Plaintiff,       )
 5                                   )
            -vs-                     ) CAUSE NO. 01:CV-5681
 6                                   )
     FIRST NATIONAL BANK OF          )
 7   MONTANA, INC., a National       )
     Banking Association and CSI     )
 8   FINANCIAL, INC., a Montana      )
     Corporation,                    )
 9                                   )
                    Defendants.      )
10                                   )
11          Taken at 1015 Mount Avenue, Suite C
                    Missoula, Montana
12        Wednesday, October 8, 2003 - 8:49 a.m.
13
14                 D E P O S I T I O N
15                         OF
16               KENNETH KAISER
17
18
19
20
21
22
23   Reported by Kami Olberding, RPR, 1015 Mount
     Avenue, Suite C, Missoula, Montana  59801, Phone
24   (406) 721-1143, 1-800-769-1052,
     Official-Freelance Court Reporter and Notary
25   Public for the State of Montana, residing in
     Lolo, Montana.
```

COPY

Page 58

1    How soon after the 90th day passed,
2  when no payment was received, was CSI required to
3  send an account back to the hospital?
4    A.  I do not know.
5    Q.  Okay.  Does this paragraph describe
6  their obligations with respect to that?
7    A.  I would say yes.
8    Q.  And what does this paragraph require
9  CSI to do with respect to the timeliness?
10    MR. BRUBAKER:  Objection, to the extent
11  you're asking for a legal opinion onto the
12  meaning of the contract.
13    Q.  (BY MS. SCRIVANI)  I'm asking for your
14  understanding.  Do you have an understanding as
15  to what CSI was supposed to do once an account
16  became 90 days delinquent?
17    A.  They would rebill it back to the bank
18  -- or back to the hospital.
19    Q.  And how soon after the 90th day were
20  they to do that?
21    A.  I don't know.
22    Q.  So you don't have an understanding by
23  reading this paragraph what their obligation was?
24    A.  My understanding is 90 days.
25    Q.  Okay.  All right.  And if you would now

Page 59

1  turn to the next page, read paragraph 9, please,
2  the third-party beneficiary paragraph, and let me
3  know when you're finished.
4    A.  (Witness examines document.)
5    Okay.
6    Q.  Do you know what efforts the bank has
7  made to obtain payment through CSI, to enforce
8  the provisions of the contract through CSI with
9  respect to Mercy?
10    A.  I sent a letter to Mercy requesting
11  payment.
12    Q.  Did the bank do anything with respect
13  to CSI?
14    A.  Not that I'm aware of.
15    Q.  Okay.  How much, sort of in the grand
16  scheme of the bank's lending business, were these
17  patient finance accounts?  Was this a big part of
18  the bank's lending or not a big part at all?
19    A.  Overall, I would say not a major part
20  of all the banks combined lending.
21    Q.  10 percent, less than 10 percent?
22    MR. BRUBAKER:  Objection, to the extent
23  it calls for speculation.
24    Q.  (BY MS. SCRIVANI)  Just asking for your
25  best estimate.  If you don't know, you don't

Page 60

1  know.
2    A.  I don't know.
3    Q.  Okay.  And with respect to the hospital
4  patient financing portion of the bank's lending,
5  how big a business was Mercy in the scheme of
6  that?
7    A.  I don't know.
8    Q.  Was Mercy considered a big account by
9  you?
10    A.  No, I had no knowledge of their
11  balances.
12    Q.  Okay.  Well would you have some idea,
13  based on the information you received from CSI,
14  in terms of when to send wires out, which banks
15  did -- or excuse me, which hospitals did more
16  business than others?
17    A.  Just by the frequency of the funding
18  requests.
19    Q.  And was Mercy one of the more frequent
20  hospitals or not?
21    A.  Not that I can -- I can't remember.
22    Q.  Okay.  All right.  Is there anything --
23  any documents that would help you to recall that
24  information?
25    A.  I'm not sure.

Page 61

1    Q.  Okay.  Now, take me through, I know we
2  talked about the process generally with respect
3  to hospitals, now I want to be specific about
4  Mercy.  I know you were not involved when Mercy
5  first became a customer of CSI, and ultimately
6  the bank.  But once you became involved, what
7  would you say your daily involvement was with
8  Mercy patient accounts, if you were involved
9  daily?
10    A.  Not daily involvement.
11    Q.  Okay.  When do you recall your first
12  involvement being with Mercy?
13    A.  I can't remember.
14    Q.  Do you know what it was?
15    A.  No.
16    Q.  Would you have received in the mail
17  these files that identified accounts, patient
18  name?
19    A.  I would receive them from CSI.  It
20  would have been a funding from them, funding
21  request from them.
22    Q.  And do you have a recollection of
23  receiving the first funding request from Mercy
24  when you took over the account?
25    A.  No, I do not.

16 (Pages 58 to 61)

b0870217-acd7-4ba4-af73-82fcc08ec91c

MERCY HEALTH, et al. v. FIRST NATIONAL BANK, et al. 10/8/2003                    KENNETH KAISER

Page 62

1    Q.  Do you have any recollection of how
2  frequently you did receive a funding request from
3  Mercy?  Was it weekly, monthly?
4    A.  I do not remember.
5    Q.  Okay.  And are there any documents that
6  would help you refresh your recollection about
7  that?
8    A.  Probably the wiring information.
9    Q.  Okay.  And what types of -- what
10 information was involved in wiring information?
11 What would I expect to see there?
12   A.  It's the wire approval of the amount
13 wired to the hospital.
14   Q.  And does it contain the hospital's
15 account number at the bank that you wired it to?
16   A.  To the bank that we wired it to, yes.
17   Q.  Okay.  And then once a wire reached
18 Mercy's bank, did you receive some sort of a
19 confirmation?
20   A.  I'm not sure.
21   Q.  Okay.  Who would know that?
22   A.  Bookkeeping department in Libby.
23   Q.  Okay.  Did you ever have, at any time
24 during the course of your relationship with
25 Mercy, have any direct contact with anybody from

Page 63

1  Mercy?
2    A.  Not direct contact.
3    Q.  Did you ever communicate with anybody
4  from Mercy?
5    A.  Sent one e-mail.
6    Q.  Okay.  Who did you send that to?
7    A.  If I remember -- I remember the name
8  Doug, but that's --
9    Q.  Okay.  If you would actually flip to
10 tab 7, is that the e-mail that you're referring
11 to, Exhibit 7?
12   A.  Yes.
13   Q.  Is this the only e-mail that you ever
14 sent to anybody from Mercy?
15   A.  That I can remember.
16   Q.  Okay.  And is the Doug Smith -- the D
17 Smith referred to there, does that refresh your
18 recollection that you sent this to Doug Smith at
19 Mercy?
20   A.  Yes.
21   Q.  Okay.  All right.  We'll come back to
22 that in a minute.
23        Did you ever have any other
24 communications with any other person from Mercy?
25   A.  Not that I can remember.

Page 64

1    Q.  Okay.  Do you know if anybody else from
2  the bank had any other communications or contact
3  with anybody from Mercy?
4    A.  I do not know that.
5    Q.  Okay.  Do you think Mr. Partain had any
6  communications with anybody from Mercy?
7    A.  I do not know.
8    Q.  Okay.  Did you and Mr. Partain ever
9  have any communications about Mercy?
10   A.  I'm sure we did, yes.
11   Q.  Can you recall any of them, generally
12 or specifically?
13   A.  No.
14   Q.  Okay.  You don't recall ever calling
15 them up and saying, Mercy's not paying us, or
16 anything along those lines?
17   A.  No.
18   Q.  Okay.  When did the bank first become
19 aware of a dispute between CSI and Mercy?
20        MR. BRUBAKER:  I'm just going to
21 object, slightly, to the phrase there.  He's not
22 here to testify on behalf of the bank, so he
23 can --
24   Q.  (BY MS. SCRIVANI)  Well, when did you
25 first become aware of any problems between Mercy

Page 65

1  and CSI?  Let me back up.  Did you ever become
2  aware of any problems between Mercy and CSI?
3    A.  Yes.
4    Q.  When?
5    A.  I'm not sure of the date.
6    Q.  Do you know what year?
7    A.  2001.
8    Q.  Okay.  And what did you become aware
9  of?
10   A.  There was a dispute regarding
11 chargebacks.
12   Q.  What do you mean when you say
13 chargebacks?
14   A.  The accounts that CSI returned to
15 Mercy.
16   Q.  Do you know the reason for the return?
17   A.  Delinquency.
18   Q.  Any other reasons?
19   A.  I don't know.
20   Q.  What did you understand the nature of
21 the dispute to be?
22   A.  Just regarding a method of payment.
23   Q.  I don't understand what you mean by
24 that.
25   A.  They would use --

17 (Pages 62 to 65)

MERCY HEALTH, et al. v. FIRST NATIONAL, et al.    10/8/2003    KENNETH KAISER

Page 66

1    Q.  Who's "they"?
2    A.  The hospital.
3    Q.  Okay.
4    A.  Hospital had paid their portion of
5    chargebacks by offsetting on new fundings.  And
6    my understanding was that the dispute arose from
7    that.
8    Q.  What about that was in dispute?
9    A.  I'm not sure.
10   Q.  Well what prompted you to send the
11   e-mail that's marked as Plaintiff's Exhibit 7 to
12   Mr. Smith?
13       Let me just back up.  Do you recall
14   sending this e-mail?
15   A.  Yes, I do.
16   Q.  Okay.  I'm sorry, what prompted you to
17   send it?
18   A.  Discussion with Bob Jaeb and Bill
19   Partain.
20   Q.  When did that discussion take place?
21   A.  In October 2001, the date of the
22   e-mail.
23   Q.  And what was that discussion?  What did
24   you say, what did Bob Jaeb say, what did Bill
25   Partain say?

Page 67

1    A.  I can't remember.
2    Q.  Do you have any recollection at all
3    about what was discussed?
4    A.  Just the fact that this was a balance
5    owed by Mercy.
6    Q.  Where did that dollar amount come from
7    that appears in Exhibit 7?
8    A.  From CSI.
9    Q.  Did the bank have any independent -- or
10   did you have any independent information
11   regarding the amounts owed by Mercy to CSI,
12   allegedly?
13   A.  No.
14   Q.  Okay.  Did anybody assist you in the
15   drafting of this e-mail?
16   A.  Not that I'm aware of.
17   Q.  Did anybody review it prior to your
18   sending it to Mr. Smith?
19   A.  I believe Mr. Partain did.
20   Q.  Do you recall if he made any changes to
21   the draft that you showed him?
22   A.  I can't remember.
23   Q.  In the first sentence of the e-mail,
24   you write, "First National Bank of Montana
25   considers Mercy Health to be in default on the

Page 68

1    patient finance agreement dated October 18th,
2    1999."  What was your understanding of the
3    default?
4    A.  The default was in payment of the
5    chargeback items billed back to the hospital that
6    they had not repaid.
7    Q.  Anything else?
8    A.  That is all I can remember.
9    Q.  And it's your understanding that those
10   chargebacks were for recourse items for
11   delinquencies?
12   A.  Yes.
13   Q.  Okay.  Did you receive a response from
14   Mr. Smith with respect to this e-mail?
15   A.  I cannot remember.
16   Q.  Okay.  Do you recall if anything
17   happened after you sent this e-mail?
18   A.  Not that I can remember.
19   Q.  Okay.  Other than this e-mail, do you
20   recall if you wrote any memos or e-mails or any
21   other notes yourself with respect to the problems
22   between Mercy and CSI?
23   A.  Not that I can remember.
24   Q.  Okay.  Do you know if -- do you recall
25   ever seeing any written by anybody else from the

Page 69

1    bank?
2    A.  I don't remember seeing anything.
3    Q.  Okay.  If you would flip to Exhibit 8,
4    please.  I'd ask you to take a look through that
5    and let me know when you're finished.
6    A.  (Witness examines document.)
7        Okay.
8    Q.  Do you recall seeing this letter at
9    some point?
10   A.  Yes, I do.
11   Q.  If you'd flip to the last page, you'll
12   see that you are a carbon copy on the letter.  Do
13   you recall actually receiving this letter?
14   A.  I don't recall actually receiving it,
15   but --
16   Q.  When was the last time you saw this
17   letter?
18   A.  I saw this letter yesterday.
19   Q.  Okay.  And prior to yesterday, when was
20   the last time you would have seen this letter?
21   A.  I'm not sure when the last time was.
22   Q.  Okay.  Do you recall having seen it
23   prior to yesterday?
24   A.  Yes.
25   Q.  Okay.  But you don't recall receiving

18 (Pages 66 to 69)

b0870217-acd7-4ba4-af73-82fcc08ec91c

# EXHIBIT "K"

Smith, Doug

| | |
|---|---|
| From: | Kenneth Kaiser[SMTP:kwkaiser_02@bankersresource.com] |
| Sent: | Tuesday, October 02, 2001 9:47 AM |
| To: | 'dsmith@MERCYHEALTH.ORG' |
| Cc: | Bill Partain; 'bjaeb@csifinancial.com' |
| Subject: | RECOURSE |

Dear Mr. Smith:

First National Bank of Montana considers Mercy Health to be in default of the Patient Financing Agreement dated October 18, 1999.

Paragraph 7 of the agreement states:
PROVIDER AGREES TO REIMBURSE DIRECTLY TO THE BANK UPON NOTIFICATION BY CSI, NINETY TWO (92%) OF THE BALANCE THEN DUE ON ANY ACCOUNT THAT HAS BECOME 90 DAYS DELINQUENT DURING THE PRECEDING CALENDAR MONTH."

These charge back amounts are to be paid in cash, however, we will accept off-sets to cover this payment. Since you have not submitted a file of accounts for off-set, we must receive cash payment to cover your obligation.

Mercy Health has been billed for delinquent accounts. At this time, Mercy Health owes $1,084,733.50 in charge back accounts which were due and payable over ninety (90) days ago.

Within 24 hours please wire $1,084,733.50 to First National Bank of Montana.

Regard,

Kenneth W. Kaiser
Vice President

# EXHIBIT "L"

## SUMMONS IN A CIVIL ACTION

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Mercy Health System<br><br>v.<br><br>CSI Financial, Inc. | CIVIL ACTION NO.   01-5681<br><br>TO: (NAME AND ADDRESS OF DEFENDANT)<br><br>CSI FINANCIAL, INC.<br>100 NORTH PARK AVE.<br>P.O. BOX 182<br>HELENA, MONTANA  59624 |

**YOU ARE HEREBY SUMMONED** and required to serve upon

Plaintiff's Attorney (Name and Address)

Ronald L. Williams, Esq.
1275 Drummers Lane, Suite 202
P.O. Box 236
Wayne, PA 19087-0236

*Served 12/4/01 3:00 P.M.*

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

| | |
|---|---|
| Michael E. Kunz, Clerk of Court | Date: November 9, 2001 |

(By) Deputy Clerk

MARY L. COTTER

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS OF THE FORM.)

**I. (a) PLAINTIFFS**
*Mercy Health System*

**DEFENDANTS**
CSI Financial, Inc.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF <u>MONTGOMERY</u>
(EXCEPT IN U.S. PLAINTIFF CASES)
CANADIAN RESIDENT

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT_____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Ronald L. Williams, Esquire
STEVENS & LEE
One Glenhardie Corporate Center
1275 Drummers Lane, P.O. Box 236
Wayne, PA 19087

ATTORNEYS (IF KNOWN)
Unknown

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 2 U.S. Government
Defendant

3 Federal Question
(U.S. Government Not a Party)

☐ 4 Diversity
(Indicate Citizenship of
Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR
(For Diversity Cases Only)        PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal place of Business in This State | x 4 | ☐ 4 |
| Citizens of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal place of Business in Another State | ☐ 5 | X 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Product Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| | ☐ 320 Assault, | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 150 Recovery of | Libel & Slander | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| Overpayment & | ☐ 330 Federal | ☐ 368 Asbestos | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| Enforcement of Judgment | Employer's Liability | Personal Injury Product | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 151 Medicare Act | ☐ 340 Marine | Liability | Safety/Health | | ☐ 850 Securities/Commodities/ |
| ☐ 152 Recovery of Defaulted | ☐ 345 Marine | **PERSONAL PROPERTY** | ☐ 690 Other | | Exchange |
| Student Loans | Product Liability | ☐ 370 Other Fraud | | **LABOR** | ☐ 875 Customer Challenge |
| (Excl. Veterans) | ☐ 350 Motor | ☐ 371 Truth in Lending | | | 12 USC 3410 |
| ☐ 153 Recovery of | Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 892 Economic Stabilization Act |
| Overpayment of Veteran's | ☐ 355 Motor | Property Damage | | ☐ 861 HIA (1395ff) | ☐ 893 Environmental Matters |
| Benefits | Vehicle Product | ☐ 385 Property | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 894 Energy Allocation Act |
| ☐ 160 Stockholder's Suits | Liability | Damage Product | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 895 Freedom of Information Act |
| X 190 Other Contract | ☐ 360 Other | Liability | ☐ 730 Labor/Mgmt. Reporting | ☐ 864 SSID Title XVI | ☐ 900 Appeal of Fee Determination |
| ☐ 195 Contract Product | Personal Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | Under Equal Access of Justice |
| Liability | | | | | ☐ 950 Constitutionality of |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | State Statutes |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 890 Other Statutory Actions |
| ☐ 220 Foreclosure | ☐ 442 Employment | Vacate Sentence | ☐ 790 Other Labor Litigation | or Defendant) | |
| ☐ 230 Rent Lease & | ☐ 443 Housing/ | **HABEAS CORPUS:** | | ☐ 871 IRS - Third Party | |
| Ejectment | Accommodations | ☐ 530 General | 791 Empl. Ret. Inc. | 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 440 Other Civil | ☐ 535 Death Penalty | Security Act | | |
| ☐ 245 Tort Product Liability | Rights | ☐ 540 Mandamus & | | | |
| ☐ 290 All Other Real | | Other | | | |
| Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN**                    (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

Appeal to District
Judge from
☐ 7 Magistrate
Judgment

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
28 U.S.C. § 1332

**VII. REQUESTED** ☐ CHECK IF THIS IS A CLASS ACTION     DEMAND $ An Amount     CHECK YES only if demanded in complaint:
**IN COMPLAINT:**   UNDER F.R.C.P. 23     in excess of $75,000     JURY DEMAND   ☐ YES   ☒ NO

**VIII. RELATED CASE(S)**            (See instructions)     JUDGE _____     DOCKET NUMBER _____
**IF ANY.** None

DATE  *November 11, 2001*     SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:    Mercy Health System, One West Elm Street, Conshohocken, Pennsylvania 19428.

Address of Defendants:    CSI Financial, Inc., 100 North Park Avenue, P.O. Box 182, Helena, Montana 59624

Place of Accident, Incident or Transaction: Conshohocken, PA

(Use Reverse Side For Additional Space)

Does this case involve multidistrict litigation possibilities?                                              Yes☐    No☒
RELATED CASE, IF ANY: NONE
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                                                                                              Yes☐    No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
                                                                                              Yes☐    No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
                                                                                              Yes☐    No☒

CIVIL: (Place ☒ in ONE CATEGORY ONLY)

A. Federal Question Cases:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. All other Federal Question Cases
    (Please specify) (ERISA)

B. Diversity Jurisdiction Cases:
1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify)

## ARBITRATION CERTIFICATION
(Check appropriate Category)

I, Ronald L. Williams, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 4/5/01            _____
                         Ronald L. Williams, Attorney-at-Law                              Attorney I.D.#47912

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.
DATE: 4/9/01            _____
                         Ronald L. Williams, Attorney-at-Law                              Attorney I.D.#47912

CIV.609(9.99)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| MERCY HEALTH SYSTEM, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. |
| | : | |
| CSI FINANCIAL, INC., | : | |
| | : | |
| Defendant | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1.03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus -- Cases brought under 28 U.S.C. §2241 through §2255.                                                                                                   ( )

(b) Social Security -- Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration -- Cases required to be designated for arbitration under Local Civil Rule 53.2.                                                                                 ( )

(d) Asbestos -- Cases involving claims for personal injury or property damage from exposure to asbestos.                                                              ( )

(e) Special Management -- Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)                                                              ( )

(f) Standard Management -- Cases that do not fall into any one of the other tracks.                                                                                            ( x )

Respectfully submitted,
STEVENS & LEE

Ronald L. Williams, Esquire
Attorney I.D. No. 47912
1275 Drummers Lane, Suite 202
Wayne, PA 19087
Attorney for Plaintiff

Dated: November 9, 2001

 FILED  NOV 0 9 200



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Mercy Health System                :   CIVIL ACTION
One West Elm Street
Conshohocken, Pennsylvania 19428    :   Docket No. 01-CV-5681

         Plaintiff,                  :

          v.                     :

CSI Financial, Inc.                  :
100 North Park Ave.               :
P.O. Box 182                      :
Helena, Montana 59624          :

         Defendant.              :
                            :

## COMPLAINT

Plaintiff, Mercy Health System ("Mercy"), by and through its undersigned attorneys hereby commences this action and in support thereof states as follows:

### PARTIES

1.     Plaintiff, Mercy, is a corporation organized and existing under the laws of the State (Commonwealth) of Pennsylvania with a principal place of business located at One West Elm Street, Conshohocken, Pennsylvania 19428. It is a citizen of Pennsylvania pursuant to 28 U.S.C. § 1332(c)(1).

2.     Upon information and belief, Defendant, CSI Financial, Inc. ("CSI") is a corporation organized and existing under the laws of State of Montana, with its principal place of business at 100 North Park Avenue, P.O. Box 182, Helena, MT 59624. It is a citizen of Montana pursuant to 28 U.S.C. § 1332(c)(1).

1

## JURISDICTION

3.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as a suit between citizens of different states where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

4.    The Eastern District of Pennsylvania is the proper venue for this action pursuant to 28 U.S.C. § 1391, as it is the Judicial District in which a substantial part of the events or omissions giving rise to the claim occurred.

## THE TRANSACTION

5.    Mercy and CSI entered into a Patient Financing Agreement on October 18, 1999 (which, together with all schedules, amendments and modifications thereto is hereafter referred to as the "Agreement") whereby Mercy agreed to participate in a program offered by CSI in which CSI would pay Mercy certain monies (92%) as to Mercy accounts receivables and, in return for CSI collection efforts, CSI would retain certain monies (8%). A true and correct copy of the Agreement is attached hereto as Exhibit "A."

6.    The Agreement ran for a period of 12 months and the Agreement contains an automatic renewal provision for an identical term unless either party elected to terminate the Agreement by providing the notice required in the Agreement. See paragraph 10 of the Agreement.

7.    Each party had a right to terminate the Agreement without notice for a material breach. See paragraph 10 of the Agreement.

8.    Pursuant to the Agreement, CSI had to return all accounts receivables immediately upon realizing a 90 day delinquency.

2

## COUNT I
## BREACH OF CONTRACT

9.     Mercy incorporates by reference as if fully set forth herein the allegations set forth in paragraphs 1 through 8.

10.    Mercy performed its duties and obligations as set forth in the Agreement pursuant to the terms and conditions of the Agreement.

11.    CSI breached the Agreement by failing to immediately present Mercy's delinquent patient accounts for a recourse within the contractually required ninety (90) day time period in violation of paragraph 7 of the Agreement.

12.    CSI also breached the Agreement by:

(a)     Wrongfully offsetting payments to Mercy for the accounts that it failed to present for recourse within the contractually required ninety (90) day time period;

(b)     Mislabeling and misnaming of files;

(c)     Inaccurately and improperly posting of accounts; and

(d)     Failing to properly recourse delinquent accounts within the required time period.

13.    The breaches identified in paragraph 12 of the Complaint and CSI's failure to present Mercy's delinquent patient accounts for a recourse within the contractually required ninety (90) day time period, constitute material breaches of the Agreement.

14.    Pursuant to paragraph 10 of the Agreement, on or about October 9, 2001, Mercy put CSI on notice that CSI had defaulted under the Agreement due to among other things, CSI's failure to present Mercy's delinquent patient accounts for a recourse within the contractually required ninety (90) day time period in violation of paragraph 7 of the Agreement.

15.    CSI failed to cure its defaults under the terms of the Agreement.

3

16.    Despite demand, CSI failed and/or refused to pay the sums due and owing to Mercy pursuant to the terms of the Agreement.

17.    By virtue of CSI's aforementioned defaults and pursuant to the terms of the Agreement, Mercy is entitled to the entry of judgment against CSI for all sums due and owing to Mercy.

18.    CSI agreed to be liable for all costs and expenses, including but not limited to, attorneys' fees. See paragraph 12 of the Agreement.

WHEREFORE, Mercy Health Systems demands judgment against CSI Financial, Inc. in an amount greater than $75,000 plus interest, together with its attorneys' fees and costs and such other relief as this Court deems necessary and proper.

STEVENS & LEE, P.C.

By: _____

Ronald L. Williams, Esquire, 47912
Lorann B. Wood, Esquire, 75750
One Glenhardie Corporate Center
1275 Drummers Lane, Suite 202
P.O. Box 236
Wayne, PA 19087-0236
Attorneys for Plaintiff
Mercy Health System

DATE: November 9, 2001

4

## PATIENT FINANCING AGREEMENT

THIS AGREEMENT made and entered into this _12th_ day of
_October_____, 1999, between MERCY HEALTH SYSTEM whose mailing
address is 1 West Elm St, Conshohocken, PA 19428 (herein PROVIDER)
and CSI FINANCIAL, INC., 100 North Park Avenue, P.O. Box 182,
Helena, MT, 59624 (herein CSI).

WHEREAS, CSI has contracted with The FIRST NATIONAL BANK of
MONTANA (herein BANK) to supply PROVIDER's PATIENTS with prompt
financing for qualified accounts receivable, and

WHEREAS, PROVIDER being desirous of obtaining prompt funds for
its qualified accounts receivable, PROVIDER will participate in a
program offered by CSI whereby patients of PROVIDER may be provided
financing for sums due PROVIDER for services rendered by PROVIDER
as described in this Agreement, and

NOW THEREFORE, in consideration of the terms and provisions
of this Agreement, the parties agree as follows:

1. CSI OBLIGATIONS.  CSI agrees:

    1.1. This Agreement and all transactions performed hereunder
    by CSI shall be in accordance with all applicable federal,
    state and local laws, rules and regulations including,
    without limitation, Truth in Lending laws and as any of the
    same may be modified or amended from time to time. CSI agrees
    to indemnify, defend and hold PROVIDER harmless from any
    claim or liability relating to any violations of the forgoing
    laws and regulations;

    1.2. To provide all forms and documents necessary to
    facilitate the approval and financing of patient accounts as
    contemplated by this Agreement and

    1.3. Provide assistance in the training of PROVIDER's
    employees with respect to the procedures and guidelines
    governing the accounts receivable financing program.
    CSI will also supply the necessary training material.

    1.4. The person who executes this agreement on behalf of CSI
    is duly authorized to do so.

-1-

2.  PROVIDER OBLIGATIONS.  PROVIDER agrees:

2.1. Qualified accounts of the PROVIDER which have been submitted to CSI for financing, shall be subjected to this agreement.  PROVIDER warrants that each such account is a bona fide obligation for goods and services rendered and that it has complied with all applicable federal, state and local laws, rules and regulations and as any of the same may be modified or amended from time to time.  PROVIDER agrees to indemnify, defend and hold CSI harmless from any claim or liability relating to the financing of an invalid account receivable.

2.2. To present to CSI, on behalf of its patients, for financing only a valid debt that arises from legal and bona fide  provision of goods or services, free of all liens and encumbrances and not subject to offset or counterclaim;

The term Valid Debt refers to those accounts that are owed by the patient to the Provider.  All accounts that are transferred to the Bank that should have been purged from the Provider's accounts receivable register, will be charged interest at the rate of fifteen percent (15%) by the Bank to the Provider for the duration of the time the accounts in question remain assigned to the Bank.  Provider will be billed for accrued interest on said accounts and the accrued Interest must be paid on or before thirty (30) days after the billing date or until the account(s) is repurchased by the Provider from the Bank.

2.3 To forward directly to the BANK any payment from a patient whose account  has been financed by CSI or BANK under the terms of this Agreement.

2.4. Not to assess a surcharge on any transaction for which the patient has requested financing of his/her account by CSI under the terms of this Agreement;

2.5. PROVIDER will furnish a copy of its annual financial report to CSI to be furnished to BANK at the end of such PROVIDER's fiscal year for each year in which CSI or BANK holds an unpaid account financed by Bank.

2.6. The person who executes this agreement on behalf of PROVIDER is duly authorized to do so.


3.  TRADEMARKS AND TRADE NAMES.  Both CSI and the PROVIDER agree that all trademarks and trade names shall remain the exclusive property of the respective parties. The PROVIDER may display the service marks and other materials provided by CSI if it so desires.

-2-

4. **ACCOUNT ADJUSTMENTS.** PROVIDER agrees to establish and maintain a fair and uniform policy to resolve disputes involving its patients' accounts that have been financed by CSI. All disputes involving the goods or services shall be settled between PROVIDER and the Patient; PROVIDER agrees to indemnify, defend and hold CSI and BANK harmless from any claim or liability relating to any such dispute between a patient and PROVIDER. In addition, CSI agrees to indemnify the Hospital against any liability arising out of disputes between CSI and the patient.

5. **REIMBURSEMENT BY PROVIDER.** PROVIDER understands and agrees that accounts acquired for financing by CSI under this Agreement will be financed by the BANK. PROVIDER understands that CSI is the administrator of all accounts. PROVIDER agrees to deal only with CSI with respect to administrative, settlement and accounting inquiries. PROVIDER agrees to pay directly to the BANK on demand ninety two (92%) percent of the balance then due on any account which was acquired for financing from PROVIDER by CSI, that the BANK requires CSI to repurchase. PROVIDER will not be held responsible for CSI'S 8% prorated fee on unpaid accounts. The obligation hereunder for PROVIDER to reimburse CSI is limited to the following circumstances and the circumstances described in paragraph 7.

    5.1. transactions in which the patient disputes liability for the services;

    5.2. transactions that are fraudulent or illegal.

6. **PAYMENT OF FEES.** PROVIDER will pay to CSI a fee of eight percent (8%) for the processing and settlement of all accounts financed by CSI and the BANK. The fee will be paid by discounting accounts as they are acquired for financing by CSI by the amount of the fee provided for above. The BANK will electronically deposit ninety two percent (92%) of the financed account balance directly into PROVIDER'S bank account and the remaining eight percent (8%) directly into CSI'S bank account.

7. **RECOURSE.** At the end of each calendar month during which BANK or CSI holds any account acquired for financing from PROVIDER, CSI will automatically present to the PROVIDER for repurchase all accounts that are delinquent for 90 days. PROVIDER agrees to reimburse directly to the BANK upon notification by CSI, ninety two (92%) percent of the balance then due on any account that has become 90 days delinquent during the preceding calendar month. CSI will give immediate notice to PROVIDER of all accounts which are ninety days delinquent. PROVIDER will not be held responsible for CSI'S 8% prorated fee on any unpaid

accounts.  CSI will pay to the BANK all of the charges that are
in excess of the original balance financed by the patient.  CSI
and BANK shall have the right of offset against sums due PROVIDER
under this Agreement for the amount of any delinquent
reimbursement obligations that exceed thirty (30) days.

8.  AMENDMENT.  This Agreement may not be amended except by
written agreement between the parties.

9.  THIRD PARTY BENEFICIARY.  PROVIDER acknowledges that Bank is
a third party beneficiary of this Agreement and agrees that BANK
may directly enforce the provisions hereof in its own name and
for its own benefit, provided the BANK has made a reasonable
effort to enforce the provisions through CSI.

10.  TERMINATION.  CSI or PROVIDER may terminate this Agreement
without notice for a material breach.  In such case the
terminating party will not be held liable for any direct or
consequential damages incurred by the breaching party as the
result of termination.  Termination shall not affect the
obligations of PROVIDER with respect to accounts acquired for
financing by CSI prior to termination. This agreement is for a
term of one year and shall be automatically renewed for
successive one year periods unless Notice of Termination is given
by any party thirty (30) days prior to the anniversary date
hereof.  Either party may terminate this agreement, without
cause, upon providing the other party 60-day written notice,
certified mail, return receipt requested to the address set forth
above.

11.  EFFECTIVE DATE, BINDING EFFECT.  This Agreement shall be
effective upon its execution by both parties and shall bind the
successors, assignees and representatives of the parties.

12.  ATTORNEYS FEES.  Should it be necessary for either party to
initiate legal action to enforce or interpret this Agreement, the
prevailing party shall be entitled to all costs and expenses,
including reasonable attorney's fees, incurred as a result of
such legal action.

13.  ASSIGNABILITY.  This Agreement is not assignable without the
prior written consent of the other party, except that either may
assign this Agreement or the administration or servicing hereof
to an affiliate upon written notice to the other.

14.  CONFIDENTIALITY.  PROVIDER recognizes CSI's proprietary

interest in the financing plan in this agreement and agrees not to disclose this contract embodied or information concerning CSI's financing plan to other parties.

15.  SEVERABILITY.  If any part of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remainder of the Agreement shall not in any way be affected or impaired thereby.

IN WITNESS WHEREOF, the parties have signed this Agreement the day and year first above written.

PROVIDER: MERCY HEALTH SYSTEM

By_____

Title:_____


CSI FINANCIAL, INC.

By_____

TITLE:_____


FIRST NATIONAL BANK OF MONTANA

BY:_____

Title:_____

-5-

interest in the financing plan in this agreement and agrees not to disclose this contract embodied or information concerning CSI's financing plan to other parties.

15.  SEVERABILITY.  If any part of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remainder of the Agreement shall not in any way be affected or impaired thereby.

    IN WITNESS WHEREOF, the parties have signed this Agreement the day and year first above written.

PROVIDER: MERCY HEALTH SYSTEM

By _____

Title: _____

CSI FINANCIAL, INC.

By _____

TITLE: _____

FIRST NATIONAL BANK OF MONTANA

BY: _____

Title: AVP

-5-

# EXHIBIT "M"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RECEIVED

JUL 1 6 2002

\# Ans'd ~~~~~~~~

FIRST NATIONAL BANK OF MONTANA,     :
INC. AND CSI FINANCIAL, INC.,

        Plaintiffs              :     CIVIL ACTION NO. 2:02-CV-03608-JW

    v.

MERCY HEALTH SYSTEM OF
SOUTHEASTERN PENNSYLVANIA,

        Defendant               :

## ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT
## MERCY HEALTH SYSTEM OF SOUTHEASTERN PENNSYLVANIA

### ANSWER

    Defendant Mercy Health System of Southeastern Pennsylvania ("Mercy")

answers the allegations of the Complaint, filed by First National Bank of Montana, Inc. ("Bank")

and CSI Financial, Inc. ("CSI"), as follows:

### Jurisdiction

    1.    Denied. The allegations in this paragraph constitute conclusions of law to

which no response is required and, therefore, are denied. To the extent that this paragraph

contains any factual averments, those averments are denied.

### Parties

    2.    Denied. After reasonable investigation, Mercy is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in this

paragraph which are, therefore, denied.

    3.    Denied. After reasonable investigation, Mercy is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in this

paragraph which are, therefore, denied.

1

4.      Admitted in part and denied in part. Mercy admits that it is a nonprofit Pennsylvania Corporation. The remaining obligations contained in this paragraph are denied.

### In Personam Jurisdiction Over Defendant

5.      Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied.

5.1     Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied.

5.2     Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied.

5.3     Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied.

5.4     Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied.

5.5     Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied.

5.6     Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied.

2

5.7     Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied.

5.8     Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied.

### Venue

6.      Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied.

### Allegations Common to All Counts

7.      Denied. Mercy denies the allegations in this paragraph because the document attached as Exhibits 1 and 2 speak for themselves. To the extent that the documents have been misquoted or misinterpreted in this paragraph, these allegations are denied.

8.      Admitted in part and denied in part. Mercy admits that the parties rights and obligations are defined by the Contract. The remaining allegations contained in this paragraph are denied.

9.      Admitted in part and denied in part. Mercy admits that it assigned patient accounts to CSI pursuant to the Contract. The remaining allegations contained in this paragraph are denied.

10.     Admitted in part and denied in part. Mercy admits that it assigned patient accounts to CSI pursuant to the Contract. The remaining allegations contained in this paragraph are denied.

3

11.    Admitted in part and denied in part. Mercy admits that it assigned patient accounts to CSI pursuant to the Contract. The remaining allegations contained in this paragraph are denied.

12.    Denied. Mercy denies the allegations in this paragraph because the document attached as Exhibits 1 and 2 speak for themselves. To the extent that the documents have been misquoted or misinterpreted in this paragraph, these allegations are denied.

13.    Denied. Mercy denies the allegations in this paragraph because the document attached as Exhibits 1 and 2 speak for themselves. To the extent that the documents have been misquoted or misinterpreted in this paragraph, these allegations are denied.

14.    Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied.

15.    Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied.

16.    Denied. Mercy denies the allegations in this paragraph because the document attached as Exhibits 1 and 2 speak for themselves. To the extent that the documents have been misquoted or misinterpreted in this paragraph, these allegations are denied.

17.    Denied. Mercy denies the allegations in this paragraph because the document attached as Exhibits 1 and 2 speak for themselves. To the extent that the documents have been misquoted or misinterpreted in this paragraph, these allegations are denied.

4

## Count One
### Breach of Contract

18.    Mercy incorporates by reference each and every prior paragraph of its answer as if they were fully set forth here.

19.    Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied. Mercy denies that it (1) breached the Contract; (2) breached any duty to plaintiffs; (3) caused any harm to plaintiffs; or (4) caused any damages to plaintiffs. Instead, at all times material, Mercy complied with the Contract and acted properly and legally. Mercy incorporates by reference each and every affirmative defense as if they were fully set forth here. In fact, as set forth in Civil Action No. 01-CV-5681 (E.D. Pa.), which is incorporated here by reference as if fully set forth here, CSI materially breached the Contract causing significant damage to Mercy.

20.    Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied. Mercy denies that it (1) breached the Contract; (2) breached any duty to plaintiffs; (3) caused any harm to plaintiffs; or (4) caused any damages to plaintiffs. Instead, at all times material, Mercy complied with the Contract and acted properly and legally. Mercy incorporates by reference each and every affirmative defense as if they were fully set forth here. In fact, as set forth in Civil Action No. 01-CV-5681 (E.D. Pa.), which is incorporated here by reference as if fully set forth here, CSI materially breached the Contract causing significant damage to Mercy.

21.    Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph

contains any factual averments, those averments are denied. Mercy denies that it (1) breached the Contract; (2) breached any duty to plaintiffs; (3) caused any harm to plaintiffs; or (4) caused any damages to plaintiffs. Instead, at all times material, Mercy complied with the Contract and acted properly and legally. Mercy incorporates by reference each and every affirmative defense as if they were fully set forth here. In fact, as set forth in Civil Action No. 01-CV-5681 (E.D. Pa.), which is incorporated here by reference as if fully set forth here, CSI materially breached the Contract causing significant damage to Mercy.

## Count Two
### Anticipatory Breach

22.　　Mercy incorporates by reference each and every prior paragraph of its answer as if they were fully set forth here.

23.　　Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied. Mercy denies that it (1) breached the Contract; (2) breached any duty to plaintiffs; (3) caused any harm to plaintiffs; or (4) caused any damages to plaintiffs. Instead, at all times material, Mercy complied with the Contract and acted properly and legally. Mercy incorporates by reference each and every affirmative defense as if they were fully set forth here. In fact, as set forth in Civil Action No. 01-CV-5681 (E.D. Pa.), which is incorporated here by reference as if fully set forth here, CSI materially breached the Contract causing significant damage to Mercy.

24.　　Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied. Mercy denies that it (1) breached the Contract; (2) breached any duty to plaintiffs; (3) caused any harm to plaintiffs; or (4) caused

any damages to plaintiffs  Instead, at all times material, Mercy complied with the Contract and
acted properly and legally  Mercy incorporates by reference each and every affirmative defense
as if they were fully set forth here. In fact, as set forth in Civil Action No. 01-CV-5681 (E.D.
Pa.), which is incorporated here by reference as if fully set forth here, CSI materially breached
the Contract causing significant damage to Mercy.

## Count Three
### Conversion

25.    Mercy incorporates by reference each and every prior paragraph of its
answer as if they were fully set forth here.

26.    Denied.  The allegations in this paragraph constitute conclusions of law to
which no response is required and, therefore, are denied.  To the extent that this paragraph
contains any factual averments, those averments are denied.  Mercy denies that it (1) breached
the Contract; (2) breached any duty to plaintiffs; (3) caused any harm to plaintiffs; or (4) caused
any damages to plaintiffs.  Instead, at all times material, Mercy complied with the Contract and
acted properly and legally.  Mercy incorporates by reference each and every affirmative defense
as if they were fully set forth here.  In fact, as set forth in Civil Action No. 01-CV-5681 (E.D.
Pa.), which is incorporated here by reference as if fully set forth here, CSI materially breached
the Contract causing significant damage to Mercy.

27.    Denied.  The allegations in this paragraph constitute conclusions of law to
which no response is required and, therefore, are denied.  To the extent that this paragraph
contains any factual averments, those averments are denied.  Mercy denies that it (1) breached
the Contract; (2) breached any duty to plaintiffs; (3) caused any harm to plaintiffs; or (4) caused
any damages to plaintiffs.  Instead, at all times material, Mercy complied with the Contract and
acted properly and legally.  Mercy incorporates by reference each and every affirmative defense

7

as if they were fully set forth here. In fact, as set forth in Civil Action No. 01-CV-5681 (E.D. Pa.), which is incorporated here by reference as if fully set forth here, CSI materially breached the Contract causing significant damage to Mercy.

28.    Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied. Mercy denies that it (1) breached the Contract; (2) breached any duty to plaintiffs; (3) caused any harm to plaintiffs; or (4) caused any damages to plaintiffs. Instead, at all times material, Mercy complied with the Contract and acted properly and legally. Mercy incorporates by reference each and every affirmative defense as if they were fully set forth here. In fact, as set forth in Civil Action No. 01-CV-5681 (E.D. Pa.), which is incorporated here by reference as if fully set forth here, CSI materially breached the Contract causing significant damage to Mercy.

## Count Four
### Construction Fraud

29.    Mercy incorporates by reference each and every prior paragraph of its answer as if they were fully set forth here.

30.    Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied. Mercy denies that it (1) breached the Contract; (2) breached any duty to plaintiffs; (3) caused any harm to plaintiffs; or (4) caused any damages to plaintiffs. Instead, at all times material, Mercy complied with the Contract and acted properly and legally. Mercy incorporates by reference each and every affirmative defense as if they were fully set forth here. In fact, as set forth in Civil Action No. 01-CV-5681 (E.D.

8

Pa.), which is incorporated here by reference as if fully set forth here, CSI materially breached the Contract causing significant damage to Mercy.

31.    Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied.  To the extent that this paragraph contains any factual averments, those averments are denied.  Mercy denies that it (1) breached the Contract; (2) breached any duty to plaintiffs; (3) caused any harm to plaintiffs; or (4) caused any damages to plaintiffs.  Instead, at all times material, Mercy complied with the Contract and acted properly and legally.  Mercy incorporates by reference each and every affirmative defense as if they were fully set forth here.  In fact, as set forth in Civil Action No. 01-CV-5681 (E.D. Pa.), which is incorporated here by reference as if fully set forth here, CSI materially breached the Contract causing significant damage to Mercy.

32.    Denied.  The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied.  To the extent that this paragraph contains any factual averments, those averments are denied.  Mercy denies that it (1) breached the Contract; (2) breached any duty to plaintiffs; (3) caused any harm to plaintiffs; or (4) caused any damages to plaintiffs.  Instead, at all times material, Mercy complied with the Contract and acted properly and legally.  Mercy incorporates by reference each and every affirmative defense as if they were fully set forth here.  In fact, as set forth in Civil Action No. 01-CV-5681 (E.D. Pa.), which is incorporated here by reference as if fully set forth here, CSI materially breached the Contract causing significant damage to Mercy.

## Count Five
### Negligent Misrepresentation

33.    Mercy incorporates by reference each and every prior paragraph of its answer as if they were fully set forth here.

9

34.    Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied. Mercy denies that it (1) breached the Contract; (2) breached any duty to plaintiffs; (3) caused any harm to plaintiffs; or (4) caused any damages to plaintiffs. Instead, at all times material, Mercy complied with the Contract and acted properly and legally. Mercy incorporates by reference each and every affirmative defense as if they were fully set forth here. In fact, as set forth in Civil Action No. 01-CV-5681 (E.D. Pa.), which is incorporated here by reference as if fully set forth here, CSI materially breached the Contract causing significant damage to Mercy.

35.    Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied. Mercy denies that it (1) breached the Contract; (2) breached any duty to plaintiffs; (3) caused any harm to plaintiffs; or (4) caused any damages to plaintiffs. Instead, at all times material, Mercy complied with the Contract and acted properly and legally. Mercy incorporates by reference each and every affirmative defense as if they were fully set forth here. In fact, as set forth in Civil Action No. 01-CV-5681 (E.D. Pa.), which is incorporated here by reference as if fully set forth here, CSI materially breached the Contract causing significant damage to Mercy.

36.    Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied. Mercy denies that it (1) breached the Contract; (2) breached any duty to plaintiffs; (3) caused any harm to plaintiffs; or (4) caused any damages to plaintiffs. Instead, at all times material, Mercy complied with the Contract and

10

acted properly and legally. Mercy incorporates by reference each and every affirmative defense as if they were fully set forth here. In fact, as set forth in Civil Action No. 01-CV-5681 (E.D. Pa.), which is incorporated here by reference as if fully set forth here, CSI materially breached the Contract causing significant damage to Mercy.

37.    Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied. Mercy denies that it (1) breached the Contract; (2) breached any duty to plaintiffs; (3) caused any harm to plaintiffs; or (4) caused any damages to plaintiffs. Instead, at all times material, Mercy complied with the Contract and acted properly and legally. Mercy incorporates by reference each and every affirmative defense as if they were fully set forth here. In fact, as set forth in Civil Action No. 01-CV-5681 (E.D. Pa.), which is incorporated here by reference as if fully set forth here, CSI materially breached the Contract causing significant damage to Mercy.

38.    Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied. Mercy denies that it (1) breached the Contract; (2) breached any duty to plaintiffs; (3) caused any harm to plaintiffs; or (4) caused any damages to plaintiffs. Instead, at all times material, Mercy complied with the Contract and acted properly and legally. Mercy incorporates by reference each and every affirmative defense as if they were fully set forth here. In fact, as set forth in Civil Action No. 01-CV-5681 (E.D. Pa.), which is incorporated here by reference as if fully set forth here, CSI materially breached the Contract causing significant damage to Mercy.

39. Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied. Mercy denies that it (1) breached the Contract; (2) breached any duty to plaintiffs; (3) caused any harm to plaintiffs; or (4) caused any damages to plaintiffs. Instead, at all times material, Mercy complied with the Contract and acted properly and legally. Mercy incorporates by reference each and every affirmative defense as if they were fully set forth here. In fact, as set forth in Civil Action No. 01-CV-5681 (E.D. Pa.), which is incorporated here by reference as if fully set forth here, CSI materially breached the Contract causing significant damage to Mercy.

## Count Six
### Punitive Damage

40. Mercy incorporates by reference each and every prior paragraph of its answer as if they were fully set forth here.

41. Mercy incorporates by reference paragraphs 26, 27, 30, 31 and 34 through 38 of its answer as if they were fully set forth here.

42. Denied. The allegations in this paragraph constitute conclusions of law to which no response is required and, therefore, are denied. To the extent that this paragraph contains any factual averments, those averments are denied. Mercy denies that it (1) breached the Contract; (2) breached any duty to plaintiffs; (3) caused any harm to plaintiffs; or (4) caused any damages to plaintiffs. Instead, at all times material, Mercy complied with the Contract and acted properly and legally. Mercy incorporates by reference each and every affirmative defense as if they were fully set forth here. In fact, as set forth in Civil Action No 01-CV-5681 (E.D. Pa.), which is incorporated here by reference as if fully set forth here, CSI materially breached the Contract causing significant damage to Mercy.

## AFFIRMATIVE DEFENSES

1    Plaintiffs' complaint fails to state a claim upon which relief can be granted.

2.    Some or all of the claims alleged in plaintiffs' complaint may be barred in whole or in part by applicable statutes of limitations, the doctrine of laches or other time limitations.

3.    Plaintiffs' claims are barred in whole or in part by waiver and/or estoppel.

4.    Mercy, its managers, supervisors, representatives, and agents, acted in a lawful, legitimate and proper manner at all times relevant.

5.    Plaintiffs have suffered no damages, or in the alternative, any purported damages allegedly suffered by plaintiffs were not proximately caused by Mercy.

6.    Mercy did not commit any tortious act against plaintiffs, are not liable to plaintiffs in this matter, and plaintiffs are not entitled to any relief or damages.

7.    Plaintiffs are not entitled to the relief and damages that they seek in their complaint.

8.    Plaintiffs' claims are barred by plaintiffs' failure to elect remedies under the doctrine of election of remedies.

9.    Plaintiffs' claims are barred in whole or in part because plaintiffs have failed and/or refused to mitigate their damages.

10.    Plaintiffs' claims are barred in whole or in part by lack of causation.

11.    Plaintiffs' claims are barred in whole or in part because plaintiffs have miscalculated what alleged sums, if any, are purportedly owed to plaintiffs.

12.    Plaintiffs' claims are barred in whole or in part based on the statute of frauds.

13

13.    Plaintiffs' claims are barred in whole or in part based on plaintiffs' prior material breach of the Contract.

14.    Plaintiffs' claims are barred in whole or in part based on plaintiffs' own negligence.

15.    Plaintiffs' claims are barred in whole or in part based on plaintiff's lack of due diligence.

16.    Mercy seeks a setoff and/or recoupment of any purported claim against it based on CSI's and/or the Bank's prior material breach of the Contract by (1) failing to present Mercy each month with delinquent patient accounts for recourse that had been delinquent for 90 days; (2) improperly returning and offsetting patient accounts which were not required to be repurchased by Mercy under the Contract; (3) mislabeling and misnaming files; (4) inaccurately and improperly posting patient accounts; (5) improperly returning duplicate patient accounts for recourse and then seeking to offset these duplicate amounts;(6) failing to credit patients for overpayments and instead either applying such overpayment to an unrelated account or retaining the overpayment; and (7) improperly showing credit on patient accounts making it appear as though the account was less than 90 days delinquent.

17.    Plaintiffs' claims arise out of the Contract and, therefore, the tort claims are barred by the gist of the action doctrine.

18.    Plaintiffs' claims arise out of the Contract and, therefore, the tort claims are barred by the economic loss doctrine.

19.    Plaintiffs' claims arise out of the Contract and, therefore, the tort claims are barred by the parol evidence rule.

20    Plaintiffs have not made out a claim of conversion because plaintiffs had no ownership right in property and had no right to immediate possession. Additionally, Mercy did not exercise unauthorized dominion over any property or cause any damages. To the extent that Mercy has retained any payments, Mercy had the right to do so as an offset contractually or as at common law.

21.    Plaintiffs had no ownership interest in any of the payments received by Mercy. To the extent plaintiffs are able to prove otherwise, plaintiffs forfeited any such purported interest due to CSI's prior material breach of the Contract.

22    Plaintiffs have not made out a claim of constructive fraud because Mercy has not breached any duty to plaintiffs, has not misled plaintiffs and has not caused plaintiffs any damages.

23.    Plaintiffs have not made out a claim of negligent misrepresentation against Mercy because Mercy has not made an untrue statement to plaintiffs, did not make any statement to induce plaintiffs to act, did not induce plaintiffs to act, did not cause plaintiffs to rely on any untrue statement and did not cause plaintiffs any damage.

24.    Plaintiffs have not alleged and cannot to prove outrageous conduct on the part of Mercy. Furthermore, to allow the recovery of punitive damages in this matter would be unconstitutional.

25.    Plaintiffs cannot make out a claim of conversion by showing that Mercy was to turn over accounts receivable to plaintiffs because plaintiffs' claim alleges, at best, a purported breach of contract.

26.    Plaintiffs cannot make out a claim of constructive fraud by merely alleging that Mercy intentionally breached the Contract.

15