IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MERCY HEALTH SYSTEM, | : | CIVIL ACTION NO. 01-CV-5681 |
| Plaintiff | : | |
| v. | : | |
| ROSS P. RICHARDSON, Chapter 7 Trustee for the Bankruptcy Estate of CSI Financial, Inc., | : | |
| Defendant | : | |
| FIRST NATIONAL BANK OF MONTANA, INC. and ROSS P. RICHARDSON, Chapter 7 Trustee for the Bankruptcy Estate of CSI Financial, Inc., | : | CIVIL ACTION NO. 02-CV-3608 |
| Plaintiffs | : | |
| v. | : | |
| MERCY HEALTH SYSTEM OF SOUTHEASTERN PENNSYLVANIA, | : | |
| Defendant | : | |

# ORDER

AND NOW, this         day of              , 2005, it is hereby ORDERED and DECREED that Mercy's Motion for Partial Summary Judgment on its Claim for Breach of Contract is DENIED.

BY THE COURT:

_____
GARDNER, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MERCY HEALTH SYSTEM, | : | **CIVIL ACTION NO. 01-CV-5681** |
| Plaintiff | : | |
| v. | : | |
| ROSS P. RICHARDSON, Chapter 7 Trustee for the Bankruptcy Estate of CSI Financial, Inc., | : | |
| Defendant | : | |
| FIRST NATIONAL BANK OF MONTANA, INC. and ROSS P. RICHARDSON, Chapter 7 Trustee for the Bankruptcy Estate of CSI Financial, Inc., | : | **CIVIL ACTION NO. 02-CV-3608** |
| Plaintiffs | : | |
| v. | : | |
| MERCY HEALTH SYSTEM OF SOUTHEASTERN PENNSYLVANIA, | : | |
| Defendant | : | |

**ORDER**

AND NOW, this           day of                  , 2005, it is hereby ORDERED and DECREED that Mercy's Motion for Summary Judgment on the Claims of CSI is DENIED.

BY THE COURT:

_____

GARDNER, J.

3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MERCY HEALTH SYSTEM, | : | CIVIL ACTION NO. 01-CV-5681 |
| Plaintiff | : | |
| v. | : | |
| ROSS P. RICHARDSON, Chapter 7 Trustee for the Bankruptcy Estate of CSI Financial, Inc., | : | |
| Defendant | : | |
| FIRST NATIONAL BANK OF MONTANA, INC. and ROSS P. RICHARDSON, Chapter 7 Trustee for the Bankruptcy Estate of CSI Financial, Inc., | : | CIVIL ACTION NO. 02-CV-3608 |
| Plaintiffs | : | |
| v. | : | |
| MERCY HEALTH SYSTEM OF SOUTHEASTERN PENNSYLVANIA, | : | |
| Defendant | | |

**Ross P. Richardson's Consolidated Responses to Mercy's Motion for Partial Summary Judgment on it's Claims and Motion for Summary Judgment on Richardson's Claims**

**Preliminary Statement**

Because the facts and arguments contained in Mercy's Motion for Partial Summary Judgment on its Claim for Breach of Contract against CSI and Mercy's Motion for Summary Judgment on the Claims of CSI and First National Bank of Montana are totally related and intertwined, the Responses of Ross Richardson to those Motions are

4

consolidated into this one pleading. Mercy has failed to carry its burden of showing that it is entitled to relief in either Motion and therefore they should both be denied.

**Statement of Facts**

This matter arose as a result of a breach of the terms and conditions of a Patient Finance Agreement ("Agreement") by Mercy Health System of Southeastern Pennsylvania ("Mercy"). Mercy and CSI Financial, Inc. ("CSI") entered into the agreement on or about October 18, 1999. (Exhibit 7 Mercy's Appendix.) The agreement called for Mercy to present certain qualified accounts receivable to CSI for purchase by First National Bank of Montana ("Bank"). Under the terms of the agreement Mercy was to receive 92% and CSI 8% of the outstanding balance.

The vast majority of accounts receivable tendered by Mercy were either not qualified, or failed to perform and thus had to be returned to Mercy. (Exhibit C and D Bank's Appendix.) Many of the accounts were already more than 120 days old. Some has previously been placed with collection agencies. (Exhibit D Bank's Appendix.) Although the agreement called for Mercy to reimburse the Bank for these accounts, Mercy, on many occasions refused. (Exhibit D Bank's Appendix.) Instead, Mercy tendered more unsuitable accounts as an "offset." Mercy has not presented **any** evidence that the accounts had any value. Instead it has asked the Court to grant it a gigantic windfall by strictly interpreting the language of one paragraph in the agreement, even though that interpretation defeats the clear intent of the parties.

5

CSI attempted to work with Mercy by continuing to process the proffered replacement accounts. (Exhibit D to Bank's Appendix.) Unfortunately, Mercy's continued failure to perform under the agreement caused it to fall 1.7 million dollars in arrears to the Bank. When the Bank notified Mercy that it was in default, Mercy asked for time to arrange payment. (Exhibit G to Bank's Appendix.) However, while negotiations over the timing and method for repayment were ongoing, Mercy attempted to shift the blame to CSI by filing the instant lawsuit. The Bank and CSI then brought a countersuit for the damages caused by Mercy.

Because Mercy would not repay the bank, CSI lost its financing. When CSI attempted to refinance its loan program, it could not because of the pending litigation brought by Mercy. Accordingly, CSI was forced to go bankrupt and sold at the equivalent of sheriffs' sale. Richardson's expert has placed the loss of CSI's future value at 10.5 million dollars.

**Argument**

**Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when evidence of record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party must meet its initial burden of demonstrating this absence of genuine issue of material fact. Only if the moving party has met this burden must the nonmoving party identify "specific

6

facts showing that there is a genuine issue for trial. Fed.R.C.P. 56(e).

In the present case, Plaintiff has failed to meet the burden of demonstrating the absence of a genuine issue of material fact. Plaintiff's Statement of Material Facts standing alone is a sufficient basis for denial of the Motion. It clearly outlines the conflicting testimony between a Mercy employee, Russ Erdman and a former employee of CSI, Cindy Dorr, over what caused the breakdown in the contractual relationship. This is a classic "he said - she said" dispute, yet Mercy inexplicably reasons that this court should make a credibility determination based on an affidavit which has not been subject to cross-examination.

The function of a motion for summary judgment is to avoid a useless trial in cases where it is unnecessary and would only cause delay and expense. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038 (1977). To this end, the court may examine the pleadings and other material offered by the parties for the purpose of determining if there is a genuine issue of material fact to be tried. Fed.R.Civ.P. 56(c). *Sims v. Mack Truck Corp.,* 488 F.Supp. 592, 597 (E.D.Pa.1980).

In considering a motion for summary judgment, the court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.1987) (*en banc* ); *Arnold Pontiac-GMC,*

7

*Inc. v. General Motors Corp.*, 786 F.2d 564, 568 (3d Cir.1986). "As to materiality, the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)

The burden to demonstrate absence of material fact issues remains with the moving party regardless of which party would have the burden of persuasion at trial.  If, however, the non-movant will bear the burden of persuasion at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Fed.R.Civ.P. 56(e);  *Celotex Corp. v. Catrett,* 477 U.S. 327.

**Mercy's Own Statement of Undisputed Facts Supports Denial of Its Motions**

The record is clear that there are material factual disputes with regard to this case. Indeed, the Court need look no further than Mercy's Statement of Undisputed facts. The factual disagreement between Cindy Dorr's version of events and Russ Erdman's that is laid out in Mercy's Statement  is a classic example of a disputed issue of fact that requires determination by a fact-finder.  Faced with that reality, Mercy has sought to attack Ms. Dorr's credibility through its motion.  The Court cannot determine credibility of a witness through affidavits, particularly when the interpretation sought by Mercy does not comport with the Agreement.

The Patient Financing Agreement clearly requires Mercy to pay for all accounts that the bank required it to repurchase.  (Paragraph 5.) Moreover, the agreement requires

8

Mercy to repay CSI's 8% for disputed accounts and recoursed accounts.  Further, because administration of the agreement became so difficult, Mercy, through Doug Smith, its vice-president in charge of this program, agreed to pay CSI's 8% on all other returns as well.

Mercy seeks to avoid its clear obligations by invoking the time constraints contained in the recourse paragraph of the Agreement (paragraph 7).  That paragraph, while admittedly inartfully written, does not provide Mercy the relief it seeks.  While the language of the paragraph sets forth a mechanism and a time frame for CSI to recourse accounts, it does not state, or even imply, that Mercy can avoid its liability, made clear in paragraph five, if accounts are not recoursed in the precise manner set forth therein.  To make such a finding the Court would have to ignore all other language in the contract as well as the course of conduct of the parties.  Moreover, the interpretation of paragraph seven of the agreement suggested by Mercy allows Mercy to realize 92% payment on uncollectible accounts, at the bank's expense, a result that was never contemplated by the parties.

At best, there is an inconsistency, or repugnancy between paragraphs 5 and 7 of the agreement.  Where such an inconsistency is found, the one that effects the general purpose of the contract is entitled to greater consideration than the other, 17 *Am Jur 3d* 267 Contracts.  A subsequent, irreconcilable clause may be disregarded.  Paragraph 5 requires Mercy to repay the bank for any debt it recalls from CSI. Clearly, the bank has

9

recalled the debts of the recoursed accounts. Paragraph 7, which merely sets forth the means by which recoursed accounts are to be processed, does not effect the general purpose of the contract. The purpose of the contract is for Mercy to receive advance financing on its receivables, not a windfall on those that would not ultimately pay. The construction suggested by Mercy allows it to receive more than 1.7 million dollars in interest and fees for accounts receivable that are worthless. Such a construction cannot possibly be countenanced by a court of law.

Moreover, Mercy has waived its rights under paragraph seven by continuing to accept payments and transfer accounts through the period of the Agreement. The parties course of conduct throughout did not contemplate the strict enforcement of that provision Mercy now seeks.

Mercy is seeking to have this Court hold Defendants efforts to carry through with performance in the face of Mercy's ever-increasing material breaches against them. Such an interpretation is not only contrary to law, but also contrary to the express provisions of the agreement. As set forth above, the agreement provided that Mercy pay the Bank for all returned accounts. One of the basic canons of contract construction is that the Court must look to the whole instrument, and ascertain the intention of the parties by an examination of all that they have said, rather than of a part only. *Black v. United States*, 1875, 91 U.S. 267, 23 L.Ed. 324; *Specialties Development Corp. v. C-O-Two Fire Equipment Co.*, D.C., 109 F.Supp. 732, affirmed 207 F.2d 753, 1953, certiorari denied

10

347 U.S. 919, 74 S.Ct. 519, 98 L.Ed. 1074.

In the present case, Mercy is treating each provision of the Agreement and each action by the parties as a separate and distinct occurrence. This is rather convenient for Mercy as it allows them to ignore months of material breaches on its part and point to one specific act of CSI. It allows them to ignore the language of the entire agreement and focus only on one specific paragraphs that is to its liking. It allows Mercy to argue that each and every one of its breaches are minor and thus not material. However, the actions of Mercy are to be construed in their totality, as is the agreement and the parties intentions.

Whether a breach is material is a question of degree, and it must be answered by weighing the actual custom of men in the performance of contracts similar to the one that is involved in the specific case." *Widmer Engineering Inc. v. Dufalla*. __A2d. __, 2003 WL 22398829. Pa. Super., Oct. 21, 2003. In determining whether a failure of performance is material, a court should consider the following factors:

  a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
  b) the extent to which the injured party can be adequately compensated for that part of that benefit of which he will be deprived;
  c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
  d) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
  e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing. *Restatement*,§ 241.

11

A careful analysis of the stated factors indicates that Mercy is not entitled to the relief it seeks. Mercy could not reasonably have expected that it would be paid more than a million dollars for worthless accounts. Inasmuch as the accounts were worthless, Mercy is entitled to no compensation. Both the bank and CSI would suffer a complete forfeiture if Mercy obtains the relief sought. Finally, CSI acted in good faith at all times. It tried to work with Mercy, much to its detriment, only to have Mercy attempt to avoid its obligations on a technicality.

Mercy's bargain was not to be paid 92% value for worthless accounts. Yet it suggests to this court that had CSI returned each of these accounts on the ninetieth day it would somehow miraculously collected them. Mercy's temerity in this regard is astonishing. Mercy completely ignores the fact that most of these accounts were already severely aged when sent to CSI. It tries to persuade the court to ignore the fact that these accounts largely valueless when sent to CSI and award it a windfall based on a technical breach of conditions to the contract for which no remedy is provided in the language of the agreement.

12

**Conclusion**

Mercy has demonstrated that material factual disputes exist regarding the actions of the parties and the proper application of paragraph seven to the dispute. Accordingly its Motions for Summary Judgment should be denied.

                                                  Respectfully submitted,

                                                  /s/ Patrick J. Egan
                                                  Patrick J. Egan
                                                  239 S. Camac Street
                                                  Philadelphia, PA 19107
                                                  215-546-5040

13

## CERTIFICATE OF SERVICE

      Patrick J. Egan hereby certifies that a copy of the attached Response to Mercy's Summary Judgment Motions has been served upon the following individuals by electronic means:

E. Thomas Henefer, Esq.
Stacey A. Scrivani, Esq.
Stevens & Lee
111 North 6th Street
P.O. Box 679
Reading, PA 19603-0679


Joseph Donley, Esq.
Christopher M. Brubaker, Esq.
Kittredge, Donley, Elson, Fulem & Embick
421 Chestnut Street
Philadelphia, PA 19106


      /s/ Patrick J. Egan
Patrick J. Egan
239 S. Camac Street
Philadelphia, PA 19107
215-546-5040

DATED:  January 31, 2005