IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MERCY HEALTH SYSTEM, | : | CIVIL ACTION NO. 01-CV-5681 |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| ROSS P. RICHARDSON, Chapter 7 | : | |
| Trustee for the Bankruptcy Estate of | : | |
| CSI Financial, Inc., | : | |
| Defendant | : | |
| FIRST NATIONAL BANK OF | : | CIVIL ACTION NO. 02-CV-3608 |
| MONTANA, INC. and ROSS P. | : | |
| RICHARDSON, Chapter 7 | : | |
| Trustee for the Bankruptcy Estate of | : | |
| CSI Financial, Inc., | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| MERCY HEALTH SYSTEM OF | : | |
| SOUTHEASTERN PENNSYLVANIA, | : | |
| | | |
| Defendant | | |

**ORDER**

AND NOW, this            day of                  , 2005, it is hereby ORDERED

and DECREED that Mercy's Motion in Limine is DENIED.

BY THE COURT:

_____
GARDNER,  J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MERCY HEALTH SYSTEM, | : | CIVIL ACTION NO. 01-CV-5681 |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| ROSS P. RICHARDSON, Chapter 7 | : | |
| Trustee for the Bankruptcy Estate of | : | |
| CSI Financial, Inc., | : | |
| Defendant | : | |
| FIRST NATIONAL BANK OF | : | CIVIL ACTION NO. 02-CV-3608 |
| MONTANA, INC. and ROSS P. | : | |
| RICHARDSON, Chapter 7 | : | |
| Trustee for the Bankruptcy Estate of | : | |
| CSI Financial, Inc., | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| MERCY HEALTH SYSTEM OF | : | |
| SOUTHEASTERN PENNSYLVANIA, | : | |
| | | |
| Defendant | | |

**ROSS P. RICHARDSON'S RESPONSE
TO MERCY'S MOTION IN LIMINE TO EXCLUDE THE
TESTIMONY OF DAVE JOHNSON**

**STATEMENT OF FACTS**

This matter arose as a result of a breach of the terms and conditions of a Patient

Finance Agreement ("Agreement") by Mercy Health System of Southeastern

Pennsylvania ("Mercy"). Mercy and CSI Financial, Inc. ("CSI") entered into the

agreement on or about October 18, 1999. (Exhibit 7 Mercy's Appendix.) The agreement

called for Mercy to present certain qualified accounts receivable to CSI for purchase by

First National Bank of Montana ("Bank"). Under the terms of the agreement Mercy was to receive 92% and CSI 8% of the outstanding balance.

The vast majority of accounts receivable tendered by Mercy were either not qualified, or failed to perform and thus had to be returned to Mercy. (Exhibit C and D Bank's Appendix.) Many of the accounts were already more than 120 days old. Some has previously been placed with collection agencies. (Exhibit D Bank's Appendix.) Although the agreement called for Mercy to reimburse the Bank for these accounts, Mercy, on many occasions refused. (Exhibit D Bank's Appendix.) Instead, Mercy tendered more unsuitable accounts as an "offset." Mercy has not presented **any** evidence that the accounts had any value. Instead it has asked the Court to grant it a gigantic windfall by strictly interpreting the language of one paragraph in the agreement, even though that interpretation defeats the clear intent of the parties.

CSI attempted to work with Mercy by continuing to process the proffered replacement accounts. (Exhibit D to Bank's Appendix.) Unfortunately, Mercy's continued failure to perform under the agreement caused it to fall 1.7 million dollars in arrears to the Bank. When the Bank notified Mercy that it was in default, Mercy asked for time to arrange payment. (Exhibit G to Bank's Appendix.) However, while negotiations over the timing and method for repayment were ongoing, Mercy attempted to shift the blame to CSI by filing the instant lawsuit. The Bank and CSI then brought a countersuit for the damages caused by Mercy.

Because Mercy would not repay the bank, CSI lost its financing. When CSI

attempted to refinance its loan program, it could not because of the pending litigation brought by Mercy.  Accordingly, CSI was forced to go bankrupt and sold at the equivalent of sheriffs' sale.

The Bankruptcy Chapter 7 Trustee retained the services of Dave Johnson of Anderson and Zermuhlen to quantify CSI's damages in this case.  Mr. Johnson is a forensic accountant with decades of experience.  His CV is found at exhibit 6 to Mercy's Appendix to its Motion in Limine.  Mr. Johnson is clearly qualified to present the testimony contained in his report.  Moreover, Mr. Johnson testified extensively at a full day deposition regarding the basis for his opinions, the methodology he used and the investigation he undertook.  Plaintiff's Motion is no more than an effort to pick and choose those portions of Mr. Johnson's report and methodology  with which it disagrees and present it to the court out of context.

**ARGUMENT**

Mercy seeks to apply *Daubert* to exclude Johnson from testifying. To do so, Mercy looks to *Elcock v. Kmart*, 233 F.3d 734. In this case, a woman slipped and fell in a Kmart and sued for economic loss, among other things. The court found that the economist, in calculating plaintiff's lost wages, relied on several empirical assumptions concerning the extent of her injuries, her earning capacity before and after the accident, and her life expectancy which were not supported by the record.

In Elcock, the court applied the following holding from *Benjamin v. Peter's Farm Condominium Owners Association*, 820 F.2d 640, 643: "although mathematical exactness

is not required, [expert] testimony of post-injury earning capacity must be based upon the proper factual foundation." It also relied on *Gumbs v. International Harvester*, 718 F.2d 88: "An experts testimony [regarding future earnings loss] must be accompanied by a sufficient factual foundation before it can be submitted to the jury."

In both cases, the court held that an expert's lost future earnings were too speculative to be presented to the jury. In *Benjamin*, the expert relied solely on plaintiff's personal assessment of his ability to work at the level he worked before. In *Gumbs*, the plaintiff based his damages on a remaining life expectancy of 18 years rather than remaining work expectancy of seven and one-half years.

The *Elcock* court applied these two cases denying the use of testimony concerning lost future wages and applied them to the following facts. 1) The expert inflated her personal income from $5774 a year to $12,480, more than twice her pre-injury earnings. 2) He did not take into account the $1070 she was still making. 3) The expert ignored the fact that she was still working and inflated her salary to an arbitrary 100 percent disability figure. 4) the expert did not take into account Elcock's poorly controlled diabetes, which could cut-short her lifespan and working life.

The present matter is easily distinguished from *Elcock* in that Johnson conducted actual research into CSI's finances to come up with his calculations.  There is no evidence of blatant miscalculation as existed  in *Elcock*. Johnson's numbers are based on hard data gathered during meetings with CSI employees. He reviewed documents and analyzed economic data from CSI's database.

While it is accurate that Mr. Johnson relied on Senex data to some extent, it is significant to note that Senex was a company interested in purchasing CSI. The data is inherently more sound than the data offered at trial in *Elcock* because it came both from CSI's database and the research was paid for by a company that, as a buying interest, had no interest in inflating CSI's value, but rather paring it down to an accurate assessment of its value.

Plaintiff's also cite *JMJ Enterprises v. Via Veneto Italian Ice*, 1998 U.S. Dist. Lexis 5098. "Noting that 'helpfulness' of the expert testimony is the 'ultimate touchstone' for admissibility, the Court held that to be helpful, '1) the witness must be qualified as an expert; 2) the expert must have a reasonable factual basis for the testimony; 3) the testimony must be based on reliable methods; 4) the testimony must be relevant to the facts in issue" *Id.* at 14.

In that case, the court applied the four-point "helpful" test quoted above to determine that the expert was not qualified.  Application of the same test clearly indicates that Mr. Johnson's testimony should be allowed: 1) the work he performed was within his area of expertise. He is a forensic accountant with extensive expert experience including business valuation. 2) his testimony has a direct connection to existing facts. Experts are expected to make inferences and state opinions and they are granted wide latitude in determining what data is needed to reach a conclusion. 3) Mr. Johnson reviewed relevant documents, met with former CSI employees, researched databases, reviewed previously authored studies, and applied well-known accounting standards to these facts.

Finally, Mr. Johnson's testimony is relevant to the facts at issue. The loss of business income and ultimate demise of CSI are directly relevant to the case at bar. Accordingly, Mercy's Motion in limine should be denied.

Respectfully submitted,

 /s/ Patrick J. Egan
Patrick J. Egan
239 S. Camac Street
Philadelphia, PA 19107
215-546-5040

## CERTIFICATE OF SERVICE

Patrick J. Egan hereby certifies that a copy of the attached Response to Mercy's Summary Judgment Motions has been served upon the following individuals by electronic means:

E. Thomas Henefer, Esq.
Stacey A. Scrivani, Esq.
Stevens & Lee
111 North 6th Street
P.O. Box 679
Reading, PA 19603-0679

Joseph Donley
Christopher M. Brubaker, Esq.
Kittredge, Donley, Elson, Fulem & Embick
421 Chestnut Street
Philadelphia, PA 19106

    /s/ Patrick J. Egan
Patrick J. Egan
239 S. Camac Street
Philadelphia, PA 19107
215-546-5040

DATED:  January 31, 2005