IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MERCY HEALTH SYSTEM OF SOUTHEASTERN PENNSYLVANIA<br><br>Plaintiff,<br><br>v.<br><br>ROSS P. RICHARDSON, Chapter 7 Trustee for the Bankruptcy Estate of CSI Financial, Inc.,<br><br>Defendant. | CIVIL ACTION<br>Case No. 01-CV-5681 |
| FIRST NATIONAL BANK OF MONTANA, INC. and ROSS P. RICHARDSON, Chapter 7 Trustee for the Bankruptcy Estate of CSI Financial, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>MERCY HEALTH SYSTEM OF SOUTHEASTERN PENNSYLVANIA<br><br>Defendant. | CIVIL ACTION<br><br>Consolidated |

## ORDER

AND, NOW, this _____ day of _____, 2005, upon consideration of the First National Bank of Montana's Motion in Limine to Exclude the Marketing Materials and Related Testimony, supporting Memorandum of Law with exhibits, and any response thereto, it is hereby ORDERED that Mercy Health System of Southeastern Pennsylvania is precluded from introducing into evidence at the trial of this matter the "CSI Fast Trac" brochure (Bates numbered 3711-3721) and other marketing materials (Bates numbered 3227-3261) (collectively

1

"Marketing Materials") and any testimony from any witness regarding the Marketing Materials or any events prior to the execution of the Patient Finance Agreement on October 18, 1999.

                                                                                                 _____

                                                                                                                              J

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MERCY HEALTH SYSTEM OF SOUTHEASTERN PENNSYLVANIA, : : Plaintiff : : v. : : ROSS P. RICHARDSON, Chapter 7 Trustee : for the Bankruptcy Estate of CSI Financial, : Inc., : : Defendant : | Civil Action No. 01-CV-05681 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*   \*\*\*   \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| FIRST NATIONAL BANK OF MONTANA, : INC. and ROSS P. RICHARDSON, Chapter 7 : Trustee for the Bankruptcy Estate of CSI : Financial, Inc., : : Plaintiffs : : v. : : MERCY HEALTH SYSTEM OF : SOUTHEASTERN PENNSYLVANIA, : : Defendant : | Civil Action No. 02-CV-03608 |

## FIRST NATIONAL BANK OF MONTANA'S MOTION IN LIMINE TO EXCLUDE THE MARKETING MATERIALS AND RELATED TESTIMONY

Plaintiff, First National Bank of Montana, Inc. ("Bank"), by its undersigned counsel, Kittredge, Donley, Elson, Fullem & Embick, LLP hereby moves this Court for an order precluding Mercy Health System of Southeastern Pennsylvania ("Mercy") from introducing any evidence related to the "CSI Fast Trac" brochure (Bates numbered 3711-3721) and other marketing materials (Bates numbered 3227-3261) (collectively "Marketing Materials"). As set forth in the accompanying Memorandum of Law, the Marketing Materials are completely irrelevant to the Bank's claims in this matter. In addition, the Bank's rights in this matter are

governed by the express terms of the Patient Finance Agreement, an unambiguous contract. Extrinsic evidence in the form of the Marketing Materials and the parties' testimony regarding their understanding of the Patient Finance Agreement are not admissible to vary the terms of an unambiguous contract. Accordingly, this evidence should be excluded from trial.

                                          **Respectfully Submitted,**

                                          **KITTREDGE, DONLEY, ELSON,**
                                             **FULLEM & EMBICK, LLP**

                                          */s/ Christopher M. Brubaker*
                                          JOSEPH M. DONLEY, ESQUIRE
                                          CHRISTOPHER BRUBAKER, ESQUIRE
                                          I.D. NOS. 23058/82057
                                          400 Market Street, Suite 200
                                          Philadelphia, PA  19106-2416
                                          (215) 829-9900

Dated: March 1, 2005
                                          Attorneys for Plaintiff
                                          First National Bank of Montana

<u>IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

| | |
|---|---|
| MERCY HEALTH SYSTEM OF SOUTHEASTERN PENNSYLVANIA, : <br> : <br> Plaintiff : <br> : <br> v. : <br> : <br> ROSS P. RICHARDSON, Chapter 7 Trustee : <br> for the Bankruptcy Estate of CSI Financial, : <br> Inc., : <br> : <br> Defendant : | Civil Action <br> No. 01-CV-05681 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*   \*\*\*   \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| FIRST NATIONAL BANK OF MONTANA, : <br> INC. and ROSS P. RICHARDSON, Chapter 7 : <br> Trustee for the Bankruptcy Estate of CSI : <br> Financial, Inc., : <br> : <br> Plaintiffs : <br> : <br> v. : <br> : <br> MERCY HEALTH SYSTEM OF : <br> SOUTHEASTERN PENNSYLVANIA, : <br> : <br> Defendant : | Civil Action <br> No. 02-CV-03608 |

**FIRST NATIONAL BANK OF MONTANA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE THE MARKETING MATERIALS AND RELATED TESTIMONY**

Plaintiff, First National Bank of Montana, Inc. ("Bank"), by its undersigned counsel, Kittredge, Donley, Elson, Fullem & Embick, LLP hereby submits this memorandum of law in support of its Motion in Limine to Exclude the Marketing Materials and Related Testimony.

I.  **INTRODUCTION**

This case arises out of a dispute among the parties over their respective rights and obligations under the Patient Finance Agreement ("Agreement"). The parties in this matter are: Mercy Health System of Southeastern Pennsylvania ("Mercy") a party to the Agreement; CSI Financial, Inc.[1] ("CSI") a party to the Agreement; and, the First National Bank of Montana ("Bank") an express third-party beneficiary of the Agreement. Mercy and CSI entered into the Agreement on or about October 18, 1999. The Bank, is also a signatory to the Agreement, although it is simply an express third party beneficiary. The Bank as a third party beneficiary enjoys rights granted by the Agreement but has no obligations under the Agreement. Rather, the Agreement expressly sets forth the obligations of both CSI and Mercy, referred to as "PROVIDER" in the Agreement, but does not contain a similar Paragraph for the Bank.

The Bank had the right to demand repurchase of any account at any time. Paragraph 5 states as follows:

> 5. **REUMBURSEMENT BY PROVIDER.** PROVIDER understands and agrees that accounts acquired for financing by CSI under this Agreement will be financed by the BANK. ... PROVIDER agrees to pay directly to the BANK on demand ninety two (92%) percent of the balance then due on any account which was acquired for financing from PROVIDER by CSI, that the BANK requires CSI to repurchase.

The Agreement also provides for the repurchase of accounts by Mercy under different scenarios including, *inter alia*, the account becoming 90 days delinquent at any point during repayment by the patient (para. 7), and the account not meeting certain specifications set forth in the Agreement (para. 2).

---

[1] During the pendency of this action CSI Financial, Inc. filed for bankruptcy and is now represented in this action by Ross P. Richardson, Chapter 7 Trustee for the Bankruptcy Estate of CSI Financial, Inc. For ease of reference this party will be referred to simply as "CSI" throughout this Memorandum.

On November 1, 2004 the Bank filed a motion for partial summary judgment regarding the interpretation of the Agreement. The Bank maintains that under the clear unambiguous language of the Agreement it has the right to demand that Mercy repurchase any account at any time. Mercy responded to the Motion arguing an alternative interpretation of the Agreement which does not adhere to Pennsylvania's principles of contract interpretation. That Motion is still pending. On January 3, 2005 Mercy filed its own motion for summary judgment against the Bank, which essentially reasserted Mercy's argument on contract interpretation advanced in its response to the Bank's motion for summary judgment. Mercy has not argued that the contract is ambiguous, although it does assert an interpretation that is fundamentally different than the Bank's suggested interpretation. The Bank has opposed this motion and it is still pending.

Accompanying Mercy's motion for summary judgment was a "statement of uncontested facts" which included copies of marketing materials that CSI distributed to Mercy while soliciting Mercy's participation in the Agreement as well as testimony from numerous witnesses regarding events that occurred prior to the parties' executing the Agreement. This evidence is wholly irrelevant to the Bank's claims against Mercy. There are no claims pending against the Bank. In addition, this evidence is extrinsic to the Agreement and is therefore inadmissible with respect to the meaning of the Agreement.

## II.   LEGAL ARGUMENT

Federal Rule of Evidence ("FRE") 401 defines "relevant evidence" as: "… evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." "Evidence which is not relevant is not admissible." FRE 402. Relevant evidence may also be excluded if its probative value is substantially outweighed by the danger of prejudice, confusion

3

of the issues or misleading the jury, or for considerations of undue delay and waste of time. FRE 403.

Under Pennsylvania law the interpretation of a contract is a question of law for the court to decide. Halpin v. La Salle University, 639 A.2d 37 (Pa. Super. 1994); Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79 (3d Cir. 2001). "When a writing is clear and unequivocal, its meaning must be determined by its content alone." Murphy v. Duquesne University of the Holy Ghost, 565 Pa. 571, 591 (2001) (citations omitted). "A written contract which is deemed unambiguous must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements, or other writings are admissible to explain or vary the terms of the contract." Halpin, 639 A.2d at 39 (internal quotation marks and citations omitted). See also, Bohler-Uddeholm, 247 F.3d at 92.

It is expected that Mercy will seek to introduce evidence, including documents and testimony, regarding the time period prior to the execution of the Agreement. The documents include the "CSI Fast Trac" brochure (Bates numbered 3711-3721) and other marketing materials (Bates numbered 3227-3261) (collectively "Marketing Materials"). (A true and correct copy of the "CSI Fast Trac" brochure, Bates numbered 3711-3721, is attached hereto as Exhibit A. A true and correct copy of the other marketing materials, Bates numbered 3227-3261, are attached hereto as Exhibit B.)

The Marketing Materials are not a part of the Agreement nor are they incorporated by the terms of the Agreement. Therefore, the Marketing Materials are inadmissible regarding the meaning of the Agreement. Murphy, 565 Pa. at 591; Halpin, 639 A.2d at 39; Bohler-Uddeholm, 247 F.3d at 92. Any testimony by any witness regarding discussions between the parties about

4

the Agreement prior to its execution or the Marketing Materials ("Related Testimony") is also inadmissible. Id.

Moreover, the Bank's claim against Mercy is based on the express language of the Agreement giving the Bank the right to demand repayment of any account at any time from Mercy. There are essentially two questions necessary to a determination of the Bank's claim; (1) Is the Bank's interpretation of the Agreement correct, a question of law for the Court to decide; and, (2) What is the total amount of the accounts that the Bank demanded repayment from Mercy, a question of fact.[2] The Marketing Materials and Related Testimony are completely irrelevant to resolving these issues. As noted above, the Marketing Materials and Related Testimony may not be considered in interpreting the Agreement. The Marketing Materials and Related Testimony have absolutely no probative value in assessing what the parties did after the Agreement was executed. Even assuming for the sake of argument that Mercy's interpretation of the Agreement is correct, that the Bank's ability to recover for recourse accounts is contingent on CSI's performance under Paragraph 7 of the Agreement, the Marketing Materials and Related Testimony are totally irrelevant to deciding what the parties actually did under the Agreement. Accordingly, the Marketing Materials and Related Testimony are irrelevant and should be excluded under FRE 402. Given the lack of probative value to any issues material in this case the Marketing Materials and Related Testimony should also be excluded under FRE 403 because of their likelihood to confuse the issues, and the unnecessary expense of time and money that would result from presenting this evidence.

---

[2] In response to the Bank's Motion for Partial Summary Judgment Mercy has not argued that the Bank has not demanded repayment of the accounts at issue. Rather, Mercy has proffered an alternative interpretation of the Agreement which purports to impose various restrictions on the Bank's right to recovery not contained in the express terms of the Agreement.

5

Even assuming that the Court determines that the Agreement is ambiguous, which no one is arguing, such that extrinsic evidence is admissible to explain the ambiguity, the Marketing Materials and Related Testimony are not probative of the parties' intent with respect to the Bank's absolute right to demand repayment of any account at any time. The Third Circuit has recognized a tension in Pennsylvania contract law that allows a court to look at certain types of extrinsic evidence to determine if an apparently unambiguous contract, which must be interpreted according to its plain meaning, contains a latent ambiguity. See, Bohler-Uddeholm, 247 F.3d at 92-96 (examining both state and federal cases applying Pennsylvania law on contract interpretation). "Thus, when a court is faced with a contract containing facially unambiguous language, it seems that Pennsylvania law both requires that the court interpret the language without using extrinsic evidence, and allows the court to bring in extrinsic evidence to prove latent ambiguity." Id. at 94. The Third Circuit resolved this tension by finding that only extrinsic evidence which could be used to support a reasonable alternative interpretation of the contract may be considered. Id.

> In particular, we think that the key inquiry in this context will likely be whether the proffered extrinsic evidence is about the parties' objectively manifested "linguistic reference" regarding the terms of the contract, or is instead merely about their expectations. The former is the right type of extrinsic evidence for establishing latent ambiguity under Pennsylvania law, while the latter is not. For example, if the evidence showed that the parties normally meant to refer to Canadian dollars when they used the term "dollars," this would be evidence of the right type. Evidence regarding a party's beliefs about the general ramifications of the contract would not be the right type to establish latent ambiguity.

Id. at Fn. 3 (citations omitted).

> To summarize: a contract that is unambiguous on its face must be interpreted according to the natural meaning of its terms, unless the contract contains a latent ambiguity, whereupon extrinsic evidence may be admitted to establish the correct interpretation. However, a claim of latent ambiguity must be based on a "contractual hook": the proffered extrinsic evidence must support an alternative meaning of a specific term or terms contained in the contract, rather than simply

6

> support a general claim that the parties meant something other than what the contract says on its face. In other words, the ambiguity inquiry must be about the parties' "linguistic reference" rather than about their expectations. Furthermore, a proffered alternative meaning for the contractual hook must be reasonable; that is, it must be supported by contractual evidence that goes beyond the party's claim that the contractual hook has a certain meaning, and the interpretation cannot contradict the standard meaning of a term when the parties could have easily used another term to convey this contradictory meaning. In determining whether latent ambiguity exists in a facially unambiguous contract, a court must consider whether the extrinsic evidence that the proponent of the alternative interpretation seeks to offer is the type of evidence that could support a reasonable alternative interpretation of the contract, given the foregoing principles.

Id. at 96.

The Marketing Materials and Related Testimony are clearly being proffered by Mercy to show what Mercy expected or wants the Agreement to say. (See Mercy's Statement of Uncontested Facts in Support of its Motions for Summary Judgment). As such they are the 'wrong' type of extrinsic evidence and may not be considered in attempting to resolve an ambiguity in the Agreement. Because the Marketing Materials and Related Testimony are not probative of the parties' intent (linguistic reference) with respect to the Bank's ability to demand repayment, they have no relevance to and should be excluded.

7

### III.  CONCLUSION

The Marketing Materials and Related Testimony are not relevant to the Bank's claims in this matter and there are no claims against the Bank. Irrelevant evidence is inadmissible evidence. Extrinsic evidence is inadmissible to vary the terms of an unambiguous contract. Under Pennsylvania law only certain types of extrinsic evidence, evidence probative of the parties linguistic reference, is admissible to show and/or clarify an ambiguous contract. The Marketing Materials and Related Testimony are not probative of the parties linguistic reference and are therefore inadmissible to show and/or clarify any ambiguity in the Agreement. Because there is no legitimate purpose for which the Marketing Materials and Related Testimony may be used the introduction of this evidence would only serve to confuse the issues and would unnecessarily waste the time and money of the parties and the Court. For all of the foregoing reasons the Marketing Materials and Related Testimony must be excluded.

**Respectfully Submitted,**

**KITTREDGE, DONLEY, ELSON,
FULLEM & EMBICK, LLP**

*/s/ Joseph M. Donley*

JOSEPH M. DONLEY, ESQUIRE
CHRISTOPHER BRUBAKER, ESQUIRE
I.D. NOS. 23058/82057
400 Market Street, Suite 200
Philadelphia, PA  19106-2416
(215) 829-9900

Dated: March 1, 2005

Attorneys for Plaintiff
First National Bank of Montana

8

## CERTIFICATE OF SERVICE

I, CHRISTOPHER M. BRUBAKER, hereby certify that on this date I caused to be served a true and correct copy of the First National Bank of Montana's Motion in Limine to Exclude the Marketing Materials and Related Testimony and supporting Memorandum of Law, electronically via the Electronic Case Filing system of the United States District Court for the Eastern District of Pennsylvania ("ECF system") as follows:

>Stacey A. Scrivani, Esquire
>Stevens & Lee
>111 N. Sixth Street
>P.O. Box 679
>Reading, PA 19603-0679
>
>Patrick J. Egan, Esquire
>239 S. Camac Street
>Philadelphia, Pennsylvania 19107

The documents referenced herein are available for viewing and downloading from the ECF system.

Dated: March 1, 2005

Christopher M. Brubaker